Dwight J. LOVING, Private
U.S. Army, Petitioner

v.

UNITED STATES, Respondent

Nos. 03-8007 and 04-8013

Crim. App. No. 8901123

United States Court of Appeals for the Armed Forces

Argued January 14, 2004, and December 8, 2004

Decided December 20, 2005

GIERKE, C.J., delivered the opinion of the Court, in which
EFFRON, BAKER, and ERDMANN, JJ., joined. CRAWFORD, J., filed a
separate opinion concurring in the result.

Counsel

For Petitioner: John H. Blume, Esq., and Teresa L. Norris, Esq.
(argued); Colonel Robert D. Teetsel (on brief); Lieutenant
Colonel Mark Tellitocci.

For Respondent: Major Mark A. Visger and Captain Magdalena A.
Przytulska (argued); Colonel Lauren B. Leeker, Lieutenant
Colonel Margaret B. Baines, Major Theresa A. Gallagher, Major
Jennifer H. McGee, and Captain Matthew J. MacLean (on brief);
Colonel Steven Salata.

Amicus Curiae: Lieutenant Michael J. Navarre, JAGC, USNR
(argued); Commander George F. Reilly, JAGC, USN, and Lieutenant
Colonel Eric B. Stone, USMC (on brief); Commander Pamela A.
Holden, JAGC, USN, for the United States Navy-Marine Corps
Appellate Defense Division.

Amicus Curiae: Eugene R. Fidell, Esq., Kevin J. Barry, Esq.,
Stephen A. Saltzburg, Esq., and Philip D. Cave, Esq., for the
National Institute of Military Justice.

**This opinion is subject to revision before final publication.**

Chief Judge GIERKE delivered the opinion of the Court.

## I. INTRODUCTION

There are two issues before this Court now:  (1) whether we have jurisdiction to entertain Petitioner's assertions of error as to the legality of his death sentence; and (2) if so, whether his two petitions seeking a writ of coram nobis properly present these challenges here.  More precisely, the first critical question is whether this Court has jurisdiction over this military death penalty case in the period after "there is a final judgment as to the legality of the proceedings" under Article 71(c)(1),[1] but before the case is "final" under Article 76.[2]  The second critical question is whether our collateral review of this case during this period extends to a writ of coram nobis or is limited to a writ of habeas corpus.

As to the first issue, we hold this Court has jurisdiction to entertain Petitioner's challenges because this Court has collateral review jurisdiction over this case during this period.  The Supreme Court has recognized that this Court has collateral review jurisdiction, and we find no authority inconsistent with our present exercise of this collateral review jurisdiction.

---

[1] Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 871(c)(1) (2000).
[2] UCMJ, 10 U.S.C. § 876 (2000).

As to the second issue, we hold that the present petitions do not present legal challenges properly here because coram nobis is not available. At this point in the case, a petition for a writ of habeas corpus is the only pleading available to raise the substantive issues before this Court. So for the reasons stated below, we dismiss both petitions without prejudice to Petitioner to refile a writ of habeas corpus with this Court.

Although we do not address the merits of these petitions now, the circumstance of this being a capital case is constantly before us. But some principles related to the resolution of these issues apply to all military justice cases.

"Death is different" is a fundamental principle of Eighth Amendment law.[3] This legal maxim reflects the unique severity and irrevocable nature of capital punishment, infuses the legal process with special protections to insure a fair and reliable verdict and capital sentence, and mandates a plenary and meaningful judicial review before the execution of a citizen.[4] All three branches of government are involved in a dynamic and

---

[3] See Ring v. Arizona, 536 U.S. 584, 605-06 (2002)("[T]here is no doubt that 'death is different.'")(citation omitted); United States v. Curtis, 32 M.J. 252, 255 (C.M.A. 1991)(recognizing that "The Supreme Court, however, has made clear the Eighth Amendment requires a different treatment of death-penalty cases.").

[4] See Gilmore v. Taylor, 508 U.S. 333, 342 (1993)("[T]he Eighth Amendment requires a greater degree of accuracy and factfinding than would be true in a noncapital case."); California v. Ramos, 463 U.S. 992, 998-99 (1983)(stating "[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.").

developing process of addressing issues related to capital punishment.[5]

Both changes in capital punishment law and greater understanding in the application of established legal principles result in new issues being identified and presented almost as quickly as other issues are resolved. The impact of this constantly evolving body of capital punishment law is compounded as legal precedent from Article III federal courts relating to capital punishment is applied to military justice jurisprudence.[6]

This case illustrates these observations. In two separate petitions for extraordinary relief in the nature of writs of error coram nobis, Petitioner requests this Court to apply to

---

[5] See 151 Cong. Rec. H340, H342 (daily ed. Feb. 2, 2005)(State of the Union Address by President George W. Bush)("Soon I will send to Congress a proposal to fund special training for defense counsel in capital cases, because people on trial for their lives must have competent lawyers by their side."); Exec. Order No. 12,460, 49 Fed. Reg. 3169 (Jan. 26, 1984) (establishing a new military death penalty system that eventually with some modifications became Rule for Courts-Martial (R.C.M.) 1004); National Defense Authorization Act for Fiscal Year 2002, Pub. L. No. 107-107, § 582(a), 115 Stat. 1012, 1124 (2001)(enacting Article 25a, UCMJ, which requires a capital trial panel of "not less than 12" members unless that number is "not reasonably available because of physical conditions or military exigencies . . . ."); United States v. Loving, 41 M.J. 213 (C.A.A.F. 1994)(addressing constitutional challenges to the military death penalty); United States v. Matthews, 16 M.J. 354 (C.M.A. 1983)(invalidating the military death penalty); United States v. Curtis, 32 M.J. 252 (C.M.A. 1991) (resolving systemic challenges to the military death penalty).

[6] Recently this Court reaffirmed that "[c]onstitutional rights generally apply to members of the armed forces unless by their express terms, or the express language of the Constitution, they are inapplicable." United States v. Marcum, 60 M.J. 198, 199 (C.A.A.F. 2004). But we also recognized that "these constitutional rights may apply differently to members of the armed forces than they do to civilians. . . . Thus, when considering how the [Bill of Rights] appl[ies] in the military context, this Court has relied on Supreme Court civilian precedent, but has also specifically addressed contextual factors involving military life." Id. at 205. See generally H. F. "Sparky" Gierke, The Use of Article III Case Law in Military Jurisprudence, Army Law. Aug. 2005, at 33, 37-46.

his military justice capital case the authority of two recent Supreme Court cases -- Ring v. Arizona[7] and Wiggins v. Smith.[8]

This Court's consideration of these cases raises both threshold legal issues as well as delicate issues on the merits. The threshold issues relate to this Court's jurisdiction to consider these petitions, the appropriateness of the writ of error coram nobis at this Court, and the applicability -- including the retroactive application -- of this recent legal precedent to the present proceedings.[9]

---

[7] 536 U.S. 584 (2002).  In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court interpreted the constitutional due process and jury trial guarantees to require that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.  Applying this principle to the Arizona capital sentencing proceedings that required the finding of an aggravating factor, Ring required that a jury, rather than a judge, find the existence of the aggravating factor.  536 U.S. at 603-09.  In this opinion, Petitioner's pleading addressing this issue is referred to as the Ring Writ.  See infra note 21 and accompanying text.

[8] 539 U.S. 510 (2003).  Applying the "clearly established" precedent of Strickland v. Washington, 466 U.S. 668 (1984), that governs claims of ineffective assistance of counsel, the Supreme Court found ineffective representation by a defense counsel in a capital case who failed to pursue leads and to expand the mitigation investigation into the defendant's traumatic life history.  Wiggins, U.S. 539 at 519-20, 523-38.  In this opinion, Petitioner's pleading addressing this issue is referred to as the Wiggins Writ.  See infra note 23 and accompanying text.

[9] More precisely, the petitions present five threshold issues: (1) Does this Court have jurisdiction to consider Petitioner's two writs?; (2) If there is a basis for this Court's jurisdiction, is it both necessary and proper in light of alternate remedies available for him to present his legal challenges?; (3) Is a petition for a writ of error coram nobis the correct procedural tool to raise these issues?; (4) Are the latest petitions an abuse of the writ?; and (5) In light of the unique procedural posture of this case, can Petitioner avail himself of any of the legal holdings in Ring, Apprendi, and Wiggins to support his claims?  Answering these five questions will determine whether and how this Court should proceed to the merits of any of the issues presented in the two petitions for extraordinary relief.  Our disposition in this case requires us to address only the first four of these threshold issues.  These four issues are subsumed in the two decisional issues stated at the outset of this opinion.

On the other hand, the issues relating to the merits of these two writs question the authority of the President to promulgate aggravating factors, the reliability of the capital sentencing weighing process, and the effectiveness of counsel in making decisions relating to investigating the background of Petitioner.[10]

We acknowledge the tension that arises from the extended time involved in the appellate litigation of this capital case and the precise application of legal principles that operate to insure a fair and reliable adjudication of a capital sentence. But the commitment to justice in this capital case requires a patient and solemn resolve to proceed prudently, because "death is different." [11]

## II. APPELLATE HISTORY

This is a capital case that this Court affirmed on direct appeal.[12] Afterwards, this Court granted a petition for reconsideration in part by deleting an inaccurate factual

---

[10] The Ring Writ raises these two questions: (1) Did the President exceed his authority by promulgating aggravating factors if these aggravating factors are "functional elements" of a crime? and (2) Are court members required to find beyond a reasonable doubt that any mitigating circumstances are outweighed by the aggravating factors? The Wiggins Writ presents the final question: Did trial defense counsel perform an adequate investigation as a necessary predicate for the tactical decision not to request funding for a mitigation specialist? Again, because of our disposition in this case, we do not address any of the issues related to the merits.

[11] Ring, 536 U.S. at 605-06; see Kyles v. Whitley, 514 U.S. 419, 422 (1995)(quoting Burger v. Kemp, 483 U.S. 776, 785 (1987)("[O]ur duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case.")(quotation marks omitted).

[12] United States v. Loving, 41 M.J. 213 (C.A.A.F. 1994).

6

statement from our opinion.[13]  Later the Supreme Court granted

certiorari and affirmed this Court's decision.[14]

After the Supreme Court decision, Petitioner filed a

petition for extraordinary relief in the nature of mandamus at

the Court of Criminal Appeals, asserting that felony murder

under Article 118(4)[15] is constitutionally infirm because it

permits a death sentence but does not require an intent to kill.

The lower court denied the petition.  Petitioner filed a writ

appeal petition, and this Court affirmed the lower court's

decision.[16]  That opinion documents the prior appellate history

of this case.[17]

While the writ appeal petition was pending, Petitioner

filed another petition for reconsideration with this Court,

asserting an instructional error by the military judge.  This

Court denied the petition for reconsideration.[18]

Petitioner later filed a third petition for

reconsideration, asserting that this Court applied an incorrect

legal test in its evaluation of his claim of ineffective

assistance of counsel.  This Court denied the petition for

---

[13] United States v. Loving, 42 M.J. 109 (C.A.A.F. 1995)(summary disposition).
[14] Loving v. United States, 517 U.S. 748 (1996).
[15] UCMJ, 10 U.S.C. § 918(4)(2000).
[16] Loving v. Hart, 47 M.J. 438 (C.A.A.F.)(holding that felony murder under Article 118(4), UCMJ, 10 U.S.C. § 918(4), passes constitutional muster as a capital offense in this case because the panel found Petitioner was the "actual perpetrator of the killing" -- acting personally and intentionally), cert. denied, 525 U.S. 1040 (1998).
[17] 47 M.J. at 440.
[18] United States v. Loving, 49 M.J. 387 (C.A.A.F. 1998)(summary disposition).

7

reconsideration.[19]  The case has been forwarded to the President

for action under Article 71(a),[20] but he has not yet acted.


### III. BACKGROUND OF
### TWO PETITIONS FOR EXTRAORDINARY RELIEF
### IN THE NATURE OF A WRIT OF ERROR CORAM NOBIS

#### A. The Ring Writ

On April 15, 2003, this Court received a petition for

extraordinary relief in the nature of a writ of error coram

nobis[21] -- the Ring[22] Writ.  This Court issued a show cause order,

the Government responded, and Petitioner filed a reply brief.

On July 21, 2003, Petitioner requested oral argument.  This

Court granted the request and heard oral argument on this writ

on January 14, 2004.

#### B. The Wiggins Writ

On February 17, 2004, another petition for extraordinary

relief in the nature of a writ of error coram nobis was filed in

this Court[23] -- the Wiggins[24] Writ.  This Court again issued a

show cause order, the Government responded, and on May 10, 2004,

Petitioner filed a reply brief and requested oral argument.

---

[19] United States v. Loving, 54 M.J. 459 (C.A.A.F.) (summary disposition),
cert. denied, 534 U.S. 949 (2001).
[20] 10 U.S.C. § 871(a) (2000).
[21] Petition for Extraordinary Relief in the Nature of a Writ of Coram Nobis,
Loving v. United States, No. 03-8007 (C.A.A.F. Apr. 15, 2003) [hereinafter
Ring Writ].
[22] See Ring, 536 U.S. at 605-06.
[23] Petition for Extraordinary Relief in the Nature of a Writ of Error Coram
Nobis, Loving v. United States, No. 04-8015 (C.A.A.F. Feb 17, 2004)
[hereinafter Wiggins Writ].
[24] See Wiggins, 539 U.S. 510.

This Court again granted this request and heard oral argument on December 8, 2004.

IV.    DISCUSSION OF THE THRESHOLD ISSUES

A.    Does this Court have jurisdiction to consider Petitioner's two writs?

We approach this issue knowing that "every federal appellate court has a special obligation to 'satisfy itself . . . of its own jurisdiction . . . .'"[25]  The primacy of the issue of subject matter jurisdiction here is reaffirmed by the position of the Government that this Court has no jurisdiction to address Petitioner's attack on his conviction and sentence because they became final after the Supreme Court's decision on review of his direct appeal.

First, the Government asserts that "[a]lthough this Honorable Court once had jurisdiction to review this case, there is simply no basis for continuing jurisdiction."[26]  Second, following this Court's prior decision denying a writ appeal petition in Loving v. Hart,[27] the Government asserted in its opposition to Petitioner's certiorari petition to the Supreme Court that this Court "erred in exercising jurisdiction over the claim [writ appeal petition] under 28 U.S.C. § 1651(a)[2000]

---

[25] Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)(quoting Mitchell v. Maurer, 293 U.S. 237, 244 (1934)).
[26] Answer to Petition for Extraordinary Relief in the Nature of a Writ of Error Coram Nobis at 6, Loving v. United States, No. 03-8007 (C.A.A.F. June 16, 2003)[hereinafter Answer to Ring Writ].
[27] 47 M.J. 438.

[the All Writs Act]."[28]  In this pleading the Government reasoned as follows:

> Petitioner's current challenge is a collateral attack on his conviction and sentence, which became final upon this Court's decision on review of his direct appeal. . . . The United States Court of Appeals for the Armed Forces . . . does not have jurisdiction to grant [habeas corpus relief under 28 U.S.C. § 2241 or] the equivalent relief in this case under the All Writs Act . . . . Therefore that court had no jurisdiction under 28 U.S.C. § 1651(a) to grant a petition for extraordinary relief "in aid of [its] jurisdiction[]."[29]

Our evaluation of the Government argument that this Court has no jurisdiction must begin with the Constitution.  Acting under Article I, Congress established this Court.[30]  As an Article I court, this is a Court of limited jurisdiction.

In Clinton v. Goldsmith,[31] the Supreme Court reaffirmed that our "independent statutory jurisdiction is narrowly circumscribed."[32]  This statement reflects the longstanding rule that, "Article I courts are courts of special jurisdiction created by Congress that cannot be given the plenary powers of Article III courts.  The authority of the Article I court is not only circumscribed by the [C]onstitution, but limited as well by

---

[28] Brief for Respondents in Opposition at 10-11, Loving v. Hart, 525 U.S. 1040 (1998)(No. 98-251).
[29] Id. at 11 (citations omitted).
[30] Article 141, UCMJ, 10 U.S.C. § 941 (2000) ("There is a court of record known as the United States Court of Appeals for the Armed Forces.  The court is established under article I of the Constitution.").
[31] 526 U.S. 529 (1999).
[32] Id. at 535.

the powers given to it by Congress."[33]  As we may not act unless Congress has given us the authority to do so, we must examine the statute that gives this Court jurisdiction.

Article 67(a),[34] states in part:  "The Court of Appeals for the Armed Forces shall review the record in -- (1) all cases in which the sentence, as affirmed by a Court of Criminal Appeals, extends to death[.]"  This statute expressly and unequivocally establishes the subject matter jurisdiction of this Court over death penalty cases on direct appeal.  The narrower issue is whether this Court's jurisdiction continues after completion of the direct review by the Supreme Court and during the period in which the case is pending presidential action under Article 71(a).  This issue invites the Court to consider two questions of first impression:  (1) when a capital case becomes final in the military justice system and (2) what impact finality has on this Court's jurisdiction.

Before explaining our reasoning, we think it prudent to answer these questions.  A capital case is final with the meaning of Article 76 only after the President, acting under Article 71(a), approves it.  As finality under Article 76 is the terminal point for proceedings within the court-martial and military justice system, this Court's jurisdiction continues until a case is final.  We proceed to our analysis appreciating

---

[33] In re United Missouri Bank of Kansas City, N.A., 901 F.2d 1449, 1451-52 (8th Cir. 1990) (internal citation omitted).
[34] UCMJ, 10 U.S.C. § 867(a) (2000).

the distinction between "finality" under Article 76 as the terminal point in the proceedings and "a final judgment as to the legality of the proceedings" under Article 71(c)(1) that establishes the point of completion of the direct legal review. As will be presented below, these are the foundational concepts that reflect the primary responsibility of this Court for the supervision of the military justice system through appellate review. These concepts also invite a continuation of discretionary, but certainly not mandatory, judicial deference to this Court by Article III courts, as seen in judicial doctrines of abstention and exhaustion, and reaffirm this Court's jurisdiction thereby supporting this Court's exercise of powers under the All Writs Act, 28 U.S.C. § 1651(a) (2000).

1. When a capital case becomes final

In deciding the issue of finality, this Court must initially consider Article 76, which states:

> § 876. Art. 76. Finality of proceedings, findings, and sentences
>
> The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States, subject only to

12

> action upon a petition for a new trial as
> provided in section 873 of this title (article
> 73) and to action by the Secretary concerned as
> provided in section 874 of this title (article
> 74), and the authority of the President.[35]

For our purposes, we focus on the plain words of this statute, which states that only "the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter . . . are final and conclusive."[36]

It is a fundamental tenet of statutory construction to construe a statute in accordance with its plain meaning.[37] On its face, Article 76 expressly requires that sentences be "approved . . . as required by this chapter" before they are final.

We next consider Article 71(a), which states:

> If the sentence of the court-martial extends to
> death, that part of the sentence providing for
> death may not be executed until approved by the
> President. In such a case, the President may
> commute, remit, or suspend the sentence, or any
> part thereof, as he sees fit. That part of the
> sentence providing for death may not be
> suspended.[38]

---

[35] 10 U.S.C. § 876 (citations added).

[36] Id.

[37] See Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.") (citations and internal quotation marks omitted); Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)("[I]n interpreting a statute a court should always turn first to one cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); see also Norman J. Singer, 2A Sutherland Statutory Construction §§ 45.02, 46.01 (6th ed. 2000).

[38] 10 U.S.C. § 871(a).

From the plain language of this statute, it is clear and undisputed that the President must "approve" a sentence of death before it is executed.  It is equally clear from the plain words of Articles 71(a) and 76 that the President must "approve" a sentence of death before a capital case is final within the meaning of Article 76.  Furthermore, this reading of the plain text is supported by the legislative history of Article 76.

At the time of enactment of the UCMJ, both Armed Services Committees said of Article 76:  "This article is derived from AW [Article of War] 50(h) and is modified to conform to terminology used in this code.  Subject only to a petition for a writ of habeas corpus in Federal court, it provides for the finality of court-martial proceedings and judgments."[39]  We, therefore, examine Article of War (AW) 50(h)[40] to better understand the operation of Article 76.

AW 50(h) states:

> h. FINALITY OF COURT-MARTIAL JUDGMENTS. --
> The appellate review of records of trial
> provided by this article, the confirming action
> taken pursuant to articles 48 or 49, the
> proceedings, findings, and sentences of courts-
> martial as heretofore or hereafter approved,
> reviewed, or confirmed as required by the
> Articles of War and all dismissals and
> discharges heretofore or hereafter carried into
> execution pursuant to sentences by courts-
> martial following approval, review, or
> confirmation as required by the Articles of
> War, shall be final and conclusive, and orders

---

[39] H.R. Rep. No. 81-491, at 35 (1949); S. Rep. No. 81-486, at 32 (1949) reprinted in 1980 U.S.C.C.A.N. 2222, 2258.

[40] 62 Stat. 627, 635-38, 10 U.S.C. § 1521 (1948).

> publishing the proceedings of courts-martial and all action taken pursuant to such proceedings shall be binding upon, all departments, courts, agencies, and officers of the United States, subject only to action upon application for a new trial as provided in article 53.[41]

As to AW 50(h), we again focus on the plain words of this statute that only "findings, and sentences of courts-martial as heretofore or hereafter approved, reviewed, or confirmed as required by the Articles of War . . . shall be binding . . . ." This statute expressly requires sentences be "confirmed as required by the Articles of War . . . ."

The requirement that a death sentence be "confirmed" is addressed in AW 48 that states in part:

> Art. 48. CONFIRMATION. -- In addition to the approval required by article 47, confirmation is required as follows before the sentence of a court-martial may be carried into execution, namely:
> a. By the President, with respect to any sentence --
> (1) of death, or
> (2) involving a general officer;
> Provided, That when the President has already acted as approving authority, no additional confirmation by him is necessary[.][42]

So it is clear that under AW 48 and 50(h), a death sentence was not final until the President had "confirmed" it. As the legislative history of Article 76 states that the only change between it and AW 50(h) was "terminology," it is apparent that the word "confirmed" was deleted from Article 76 because it is

---

[41] We note that almost identical language is used in AW 53 to address finality of proceedings relating to a petition for new trial.
[42] 62 Stat. 627, 635, 10 U.S.C. § 1519 (1948).

unnecessary in light of the Article 71(a) requirement that the President "approve" a death sentence. Article 76 read in conjunction with this insight into and understanding of the legislative history of Article 76 reaffirms the correctness of our reliance of plain words of Article 76 to require "approval" by the President before a death sentence is final under the UCMJ.

We observe that neither the Supreme Court nor this Court has addressed the issue as to whether presidential action under Article 71(a) is a prerequisite for a case being final in the context of addressing the jurisdiction of this Court over a capital case. Petitioner cited two Supreme Court cases to support the position that Presidential action under Article 71(a) is a prerequisite for finality in the context of this Court's jurisdiction. Dynes v. Hoover,[43] recites that a court-martial sentence "had it extended to a loss of life" becomes "final" after it is "confirmed" by the President. But we note that Dynes was a non-capital case, and the statement related to the then-existing rules under the Articles for the Governing of the Navy with no established connection to Article 76. Also in Schick v. Reed,[44] there are two statements relating to finality: the capital case was "forwarded [to the President] for final

---

[43] 61 U.S. 65, 81 (1857).
[44] 419 U.S. 256 (1974).

review as required by Art. 71(a)"[45] and "the death sentence was .

. . valid . . . subject only to final action by the President."[46]

But the issue in Schick was the validity of the President's

conditional commutation of a death sentence under Article II, §

2, clause 1, of the Constitution, and the decision did not

address the issue of finality.  We find language in both these

cases consistent with our construction of "finality" for a

capital case under the UCMJ, but of little assistance in

resolving this issue.  So we decline to rely on either Dynes or

Schick to support our conclusion.

2.  Distinction between "finality"<br>
and<br>
"a final judgment as to the legality of the proceedings"

The Supreme Court has made clear that finality under

Article 76 "only defines the point at which military court

judgments become final and requires that they be given res

judicata effect."[47]  In Gusik v. Schilder,[48] the Supreme Court

addressed the effect of AW 53,[49] an immediate statutory

---

[45] Id. at 257.

[46] Id. at 259.

[47] Schlesinger v. Councilman, 420 U.S. 738, 749 (1975).

[48] 340 U.S. 128 (1950).

[49] 62 Stat. 627, 639, 10 U.S.C. § 1525 (1948).  Under the Articles of War, AW 50(h) was the primary statute that addressed "finality of the court-martial." But, notwithstanding this provision, AW 53 authorized the Judge Advocate General to grant a petition for new trial, filed within rigid time limitations, that otherwise could have been final under AW 50(h).  So AW 53 also contained a finality provision, repeating with almost identical language the rule of finality stated in AW 50(h).  The Supreme Court in Gusik, addressed AW 53 rather than AW 50(h), as the Court opined that the petitioner was obligated to avail himself of a potential new trial remedy before seeking habeas review.  340 U.S. at 130-34.  As the language of AW 50(h) and AW 53 relating to finality are so similar, the Gusik discussion of Article 53 does not impact the Supreme Court's discussion in Schlesinger of Article 76.

predecessor of the present Article 76, and stated similarly, "We read the finality clause of Article 53 as doing no more than describing the terminal point for proceedings within the court-martial system."[50]

Understanding the distinction between "finality" as to the terminal point in the proceedings and "a final judgment as to the legality of the proceedings" in the unique military justice system is important. Article 76 addresses the former, and Article 71(c)(1) addresses the latter.

Article 71(c)(1) provides:

> If a sentence extends to death, dismissal, or a dishonorable or bad-conduct discharge and if the right of the accused to appellate review is not waived, and an appeal is not withdrawn, under section 861 of this title (article 61), that part of the sentence extending to death, dismissal, or a dishonorable or bad-conduct discharge may not be executed until there is a final judgment as to the legality of the proceedings (and with respect to death or dismissal, approval under subsection (a) or (b), as appropriate). A judgment as to legality of the proceedings is final in such cases when review is completed by a Court of Criminal Appeals and --
>
> (A) the time for the accused to file a petition for review by the Court of Appeals for the Armed Forces has expired and the accused has not filed a timely petition for such review and the case is not otherwise under review by that Court;
>
> (B) such a petition is rejected by the Court of Appeals for the Armed Forces; or

---

[50] 340 U.S. at 132-33.

> (C) review is completed in accordance with the judgment of the Court of Appeals for the Armed Forces and --
>
> (i) a petition for a writ of certiorari is not filed within the time limits prescribed by the Supreme Court;
>
> (ii) such a petition is rejected by the Supreme Court; or
>
> (iii) review is otherwise completed in accordance with the judgment of the Supreme Court.[51]

The focus of Article 71 is on the execution of certain sentences -- those relating to death, dismissal, or punitive discharges. Only certain civilian leaders can execute these sentences: the President alone can execute a death sentence and a service Secretary or designated Under Secretary or Assistant Secretary can execute a dismissal or punitive discharge. None of these persons may execute these particular sentences prior to a certain identified event occurring -- "a final judgment as to the legality of the proceedings."[52]

Only after there is "a final judgment as to the legality of the proceedings" is a sentence ripe for execution -- that is ripe for "approval" under either Article 71(a)(as to a death sentence) or Article 71(b)(as to dismissal or punitive discharge).[53] Moreover, as we stated earlier in this opinion, as to a death sentence, only after the President "approves" a death

---

[51] 10 U.S.C. § 871.
[52] Id.
[53] See Krause v. United States, 7 M.J. 427 (C.M.A. 1979)(per Cook, J., with Fletcher, C.J., concurring in the result).

19

sentence is it final.  From this statutory scheme of Article 71,
it is obvious that these specified sentences of a court-martial,
including a death sentence, even when affirmed in direct
appellate review, are not self-executing.

In defining a "final judgment as to the legality of the
proceedings," Article 71(c) states that such a judgment occurs
only when the case is complete on direct review -- including
review by a Court of Criminal Appeals and this Court, as well as
possible review by the Supreme Court.  We need not address here
the impact a "final judgment as to the legality of the
proceedings," may have upon the legal authority that pertains to
any further legal proceedings challenging the conviction and
sentence.[54]  But, from the plain language of Articles 71 and 76
and the Supreme Court's construction of Article 76, we conclude
this important point:  a "final judgment as to the legality of
the proceedings" under Article 71(c) does not result in a case
being final for the purposes of Article 76.

Having established this point, we are compelled to comment
on Rule for Courts-Martial (R.C.M.) 1209.  This provision is an
apparent attempt to blend both Articles 71(c) and 76.  To define
when "[a] court-martial is final," R.C.M. 1209(a) uses language
nearly identical to that in Article 71(c) defining "a final

---

[54] Compare Griffith v. Kentucky, 479 U.S. 314 (1987)(establishing the legal
principle that a decision of the Supreme Court that announces a "new rule"
applies to all criminal cases still pending on direct review) with Teague v.
Lane, 489 U.S. 288 (1989)(plurality opinion)(clarifying and modifying
previous decisions regarding retroactivity of new constitutional rules).

20

judgment as to the legality of the proceedings." But R.C.M. 1209(b) adds the requirement that only a so-defined final court-martial that is "approved, reviewed, or affirmed as required by the code," has the effects of finality under Article 76. R.C.M. 1209(a) and (b) read together, reflecting the authority of both Articles 71 and 76, declare the binding effect of a court-martial findings and sentence only after it is "approved" as required by these two statutes.

In summary, we proceed appreciating that there is an important distinction between two fundamental concepts in the UCMJ. Article 71(c) requires "a final judgment as to the legality of the proceedings" to render a death sentence ripe for approval by the President. Article 76 requires that the President approve a death sentence before the sentence is final, thereby describing the terminal point for proceedings within the court-martial system. We next consider what impact these two concepts have on the jurisdiction of this Court.[55]

3. The impact of finality on this Court's jurisdiction

Article 67(a) vests this Court with subject matter jurisdiction over this capital case. But this case is not final

---

[55] The recent Supreme Court case of Bell v. Thompson, 125 S. Ct. 2825 (2005), does not address the present jurisdictional issue before this Court. In Bell, the Supreme Court held that the Sixth Circuit abused its discretion in authorizing a stay of its mandate following a denial of certiorari by the Supreme Court thereby violating Fed. R. App. P. 41. In the present case, this Court has issued the mandate. United States v. Loving, 42 M.J. 111 (1995). Also, the procedural context of Bell is distinct from that of the present case. Bell addressed the termination of federal habeas corpus proceedings in an Article III court. The present case is not final under the UCMJ and has not entered collateral Article III review.

under Article 76 because the President has not ordered the sentence executed.  So we conclude that this Court's subject matter jurisdiction continues even after the Supreme Court's decision affirming Petitioner's death sentence.

This conclusion is supported by two important points: first, the plain language and legislative history of Article 67(a)(1) and Article 76, and second, the rich history of this Court's exercise of jurisdiction after completion of direct review.  The previous discussion focuses on the first point relating to statutory interpretation.  But as that authority is just one part of the support for this Court's jurisdiction, it is appropriate now to focus on the second.

Acting under Article I of the Constitution, Congress has established military law as "a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment."[56]  A cornerstone principle of military law was to vest the United States Court of Appeals for the Armed Forces, with jurisdiction "to assure direct civilian review over military justice."[57]  The Supreme Court has recognized that it was in this Court that "Congress has confided primary responsibility for the supervision of military justice in this

---

[56] Burns v. Wilson, 346 U.S. 137, 140 (1953)(plurality opinion); see also Parker v. Levy, 417 U.S. 733, 744 (1974).

[57] Noyd v. Bond, 395 U.S. 683, 694 (1969); see also S. Rep. No. 101-81 at 171 (1989)("As the highest court within the military justice system, [this Court] performs the same function as the highest appellate court within the jurisdiction of a state or the District of Columbia.").

country and abroad."[58]  Our exercise of this responsibility

through our judicial review of cases invites a continuation of

discretionary, but certainly not mandatory, judicial deference

to our judgments.[59]  Considering the Court's mandatory

jurisdiction over a capital case in Article 67(a)(1) and this

Court's pivotal role in the military justice system, it is

consistent with congressional intent that this Court retains

jurisdiction at least until a case is "approved" and "final"

under Article 76.[60]

    We consider helpful, but not dispositive, the history of

this Court's exercise of jurisdiction after completion of direct

review.[61]  In Frischholz, this Court, before addressing a

petition for a post-conviction writ in a case that was final,

stated:  "[Article 76] does not insulate a conviction from

subsequent attack in an appropriate forum.  At best it provides

finality only as to interpretations of military law by this

---

[58] Noyd, 395 U.S. at 695.

[59] Schlesinger, 420 U.S. at 753.

[60] Let there be no doubt that we do not rely on the supervisory authority of this Court to establish this Court's jurisdiction.  That is done by the plain language of Articles 67, 71, and 76.  Also, we are mindful of the general principle of statutory construction that "jurisdiction of courts is neither granted nor assumed by implication."  Singer, supra note 37, § 67.3.  That maxim is particularly apt in the case of an Article I court whose jurisdiction "must be strictly construed."  Northrop Grumman Corp. v. United States, 47 Fed. Cl. 20, 40 (2000).

[61] See, e.g., Garrett v. Lowe, 39 M.J. 293 (C.M.A. 1994); Del Prado v. United States, 23 C.M.A. 132, 48 C.M.R. 748 (1974); United States v. Frischholz, 16 C.M.A. 150, 36 C.M.R. 306 (1966).  We do not now address whether this Court has jurisdiction after a case is final under Article 76 because that issue is not raised in the present case, which involves our review only before a case is final under Article 76.

Court."[62]   We note that the Supreme Court stated its approval of this Court's construction of Article 76 in Frischholz.[63] Arguably the Supreme Court's reaffirmation of the holding in Frischholz supports the position that this Court's jurisdiction is not terminated once the case has completed direct review. This Court reaffirmed this important point in Del Prado, stating:  "Nor is the possibility for relief terminated by the exhaustion of all appellate rights and procedures established by the Uniform Code of Military Justice."[64]

But we observe that all these cases predate Goldsmith[65] and most predate the congressional attention to finality in the 1983 legislative amendments to Article 71.  Also neither Frischholz nor earlier Supreme Court cases that discuss Article 76, such as Schlesinger, address the terminal point of this Court's jurisdiction.  So we must examine the impact of both Clinton v. Goldsmith[66] and the Congressional attention to finality in the 1983 legislative amendments to Article 71.

The Supreme Court's opinion in Goldsmith[67] helped define the limits of our jurisdiction.  In Goldsmith, the Supreme Court held that this Court exceeded its jurisdiction by enjoining executive action to administratively drop an Air Force officer

---

[62] 16 C.M.A. at 151, 36 C.M.R. at 307.
[63] Schlesinger, 420 U.S. at 753.
[64] 23 C.M.A. at 133, 48 C.M.R. at 749.
[65] 526 U.S. 529 (1999).
[66] Id.
[67] Id.

from the rolls of the Air Force.  The Supreme Court stated that

Congress:

> confined th[is] court's jurisdiction to review
> of specified sentences imposed by courts-
> martial:  the CAAF has the power to act "only
> with respect to the findings and sentence as
> approved by the [court-martial's] convening
> authority and as affirmed or set aside as
> incorrect in law by the Court of Criminal
> Appeals."  10 U.S.C. § 867(c).[68]

The Supreme Court explicitly rejected this Court's

reliance on the All Writs Act,[69] as a basis for the

Court's jurisdiction to address the Air Force's action to

drop an officer from the rolls.[70]  The Supreme Court

explained that "[w]hile the All Writs Act authorizes

employment of extraordinary writs, it confines the

authority to the issuance of process 'in aid of' the

issuing court's jurisdiction. . . . [T]he Act does not

enlarge that jurisdiction[.]"[71]  As the executive action

at issue was not a "finding" or "sentence" under 10

U.S.C. § 867(c), "the elimination of Goldsmith from the

---

[68] Id. at 534.
[69] 28 U.S.C. § 1651(a).
[70] Goldsmith 526 U.S. at 534.
[71] Id.  Goldsmith expressly does not attempt to provide a comprehensive analysis of this Court's writ authority.  The Supreme Court stated:

> We have already seen that the CAAF's independent statutory
> jurisdiction is narrowly circumscribed.  To be more specific,
> the CAAF "is accorded jurisdiction by statute (so far as it"
> concerns us here) to "review the record in [specified] cases
> reviewed by" the service courts of criminal appeals, 10 U.S.C.
> § 867(a)(2), (3), which in turn have jurisdiction to "review
> court-martial cases," § 866(a).

Id. at 535.

rolls appears straightforwardly to have been beyond the CAAF's jurisdiction to review and hence beyond the 'aid' of the All Writs Act in reviewing it."[72]

Unlike Goldsmith, the present capital case arises from and relates to both a "finding" and "sentence" that was imposed in a court-martial proceeding. As we have stated, pursuant to the authorization of Congress, this Court is the only federal civilian court with the jurisdiction to accomplish mandatory review of this capital case.[73] So the concerns raised by the Supreme Court in Goldsmith are not in play in the present case.

This jurisdiction of this Court is compatible with the final limitation in Goldsmith that the Supreme Court identified when it stated:

> [T]he CAAF is not given authority, by the All Writs Act or otherwise, to oversee all matters arguably related to military justice, or to act as a plenary administrator even of criminal judgments it has affirmed. Simply stated, there is no source of continuing jurisdiction for the CAAF over all actions administering sentences that the CAAF at one time had the power to review.[74]

Consistent with this precedent, in the present case this Court does not address any issues relating to the "actions administering sentences that [this Court] at one time had the power to review." On the contrary, the present issues implicate

---

[72] Id.
[73] See Article 67(a).
[74] Goldsmith, 526 U.S. at 536.

the validity and integrity of this Court's prior judgment in this capital case.

Because this capital case is not yet final under Article 76, we conclude that this Court has subject matter jurisdiction to address Petitioner's two writs.[75] So we turn from the power of this Court to act to the question of whether it should entertain either of Petitioner's present writs.

### B. Is Petitioner's Writ of Coram Nobis an Appropriate Pleading to Request this Court to Consider the Issues Presented in These Two Petitions?

### 1. This Court has power to issue extraordinary writs "in aid of" its jurisdiction

The All Writs Act authorizes "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions."[76] It is well established that "the All Writs Act authorizes employment of extraordinary writs, [and] it confines the authority to the issuances of process 'in

---

[75] Moreover, assuming that the provisions of Article 71(c) relating to "a final judgment as to the legality of the proceedings" operates to render this death sentence "final," we also conclude that this Court retains subject matter jurisdiction over this capital case. Simply stated, whether this case is "final" under Article 71(c) or not, this Court has subject matter jurisdiction under Article 67(a)(1), over this capital case. On this point, we state that there is nothing in the legislative history of Article 71(c) that indicates the congressional purpose to terminate this Court's jurisdiction over a capital case. Also it is important to note that Congress made no changes to Article 76 when it amended Article 71(c). Had Congress intended to deprive this Court of all jurisdiction after complete review by the Supreme Court, we believe in light of this Court's mandatory jurisdiction over every capital case in Article 67(a)(1), Congress would have made its purpose clear and unequivocal. In summary, even after "a final judgment as to the legality of the proceedings," Petitioner may collaterally attack his conviction and sentence, and this Court has judicial power to entertain Petitioner's later challenges.

[76] 28 U.S.C. § 1651(a).

aid of' the issuing court's jurisdiction."[77] The Supreme Court has recognized this Court's power to issue extraordinary writs under the All Writs Act.[78] So having established this Court's statutory subject matter jurisdiction in this capital case, this Court may invoke the All Writs Act.

The Supreme Court has also made clear that our power under the All Writs Act is "essentially equitable and, as such, not generally available to provide alternatives to other adequate remedies at law."[79] The Supreme Court also has stated that "a writ may not be used . . . when another method of review will suffice."[80] This statement reaffirmed the Supreme Court's earlier statement in Carlisle v. United States[81] that: "The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act that is controlling."[82]

So our considering these two writs pursuant to the authority of the All Writs Act must be consistent with these limitations -- that it is "necessary or appropriate" to address

---

[77] Goldsmith, 526 U.S. at 534.
[78] See id. (citing Noyd, 395 U.S. at 695 n.7).
[79] Id. at 537.
[80] Id. (quoting 9 Moore's Federal Practice § 201.40).
[81] 517 U.S. 416 (1996).
[82] Id. at 429 (quoting Pennsylvania Bureau of Corr. v. United States Marshals Service, 474 U.S. 34, 43 (1985)). The Court explained that Fed. R. Crim. P. 29 provides the applicable law governing motions for judgment of acquittal. Id. Although Carlisle could not take advantage of Rule 29's protections because he filed his motion out of time, the Court held that coram nobis was nonetheless unavailable to him. Id.

the unique issues relating to the capital sentence in this case and that the authority to issue the requested writs is not otherwise covered by another statute. These fundamental principles relating to our power under the All Writs Act require us to consider several issues: first, whether the Article 71(a) requirement for presidential action prior to execution of the death sentence constitutes an adequate remedy under law thereby rendering present review unnecessary and inappropriate; second, whether possible review by an Article III court constitutes an adequate remedy under law, thereby rendering present review unnecessary and inappropriate; and third, whether there are other adequate remedies at law available before this Court -- specifically whether a writ of habeas corpus is available for Petitioner here and now.

   2.  Later presidential action does not render this Court's
       present review either unnecessary or inappropriate


    We conclude that presidential action is not an adequate remedy at law. Presidential action is akin to a state governor's action, and as such, is not part of the direct judicial review of the case. Article 71 requires, prior to an action by the President regarding a death sentence, that this Court complete judicial review and that the Supreme Court resolve any petition for a writ of certiorari filed with it.

This construction is supported by the legislative history of the 1983 amendments of Article 71 that suggests that they were intended to separate the executive clemency powers of the President from the judicial review of the proceedings. The Senate Report on Article 71 explains:

> This legislation continues the present requirement that death sentences receive Presidential approval and that dismissal of an officer be approved by the Secretary of the Military Department concerned before such sentences are executed under Article 71. Such reviews are conducted after all legal reviews are completed, and do not involve a review of the legality of the proceedings; rather, they are conducted as a matter of clemency.[83]

Indeed, as the President's action takes place within the framework of the findings and sentence approved during the judicial review, it is both "necessary" and "appropriate" for this Court to resolve any post-conviction and legal issues before the President acts under Article 71(a). Our construction of the executive clemency powers of the President contained in the UCMJ, as separate from the judicial review of the proceedings by this Court, also makes clear that later Presidential action does not provide a substitute for our judicial review.[84]

---

[83] S. Rep. No. 98-53, at 24 (1983), reprinted in Index and Legislative History, Uniform Code of Military Justice 550 (1984).

[84] In this regard, we are mindful of the guidance as to the exercise of our power under the All Writs Act in Goldsmith. In addition to holding that this Court had no jurisdiction to issue a writ, the Supreme Court held in Goldsmith that even if it was within the jurisdiction of this Court to review the underlying issue, "resort to the All Writs Act would still be out of bounds, being unjustifiable either as 'necessary' or as 'appropriate' in

3.  Possible review by an Article III court does not render this Court's present review either unnecessary or inappropriate

Neither do we find that possible or eventual review by Article III Courts is an adequate remedy at law.  We reach this conclusion only after carefully examining the question of whether an Article III court can exercise collateral review after there is "a final judgment as to the legality of the proceedings" pursuant to Article 71(c) but before there is executive action taken on the findings and sentence under Article 71(a) and the case becomes final under Article 76.  In addressing this issue, we find solid guidance and persuasive reasoning in Blair-Bey v. Quick.[85]

In Blair-Bey, the United States Court of Appeals for the District of Columbia Circuit addressed the jurisdiction of the federal courts to entertain a habeas petition challenging the procedures by which the petitioner was denied parole in the District of Columbia.  The district court had dismissed the petition after finding that the federal courts were precluded by a provision of the D.C. Code, § 16-1901, from entertaining

---

light of alternative remedies available to a servicemember demanding to be kept on the rolls."  526 U.S. at 537.  The Court then outlined "alternative statutory avenues of relief" that prevented the All Writs Act from coming into play.  The Supreme Court concluded that an injunction was not allowed under the All Writs Act "since other administrative bodies in the military, and the federal courts, have authority to provide administrative or judicial review of the action challenged by respondent."  Id. at 537-38.  We conclude that the clemency action by the President under Article 71 does not provide the administrative or judicial review sufficient to address Petitioner's present challenges to his death sentence.
[85] 151 F.3d 1036 (D.C. Cir. 1998).

petitions filed by D.C. prisoners.  But the appellate court held

that it had jurisdiction to entertain the petition and stated:

> In deciding whether Congress intended to
> restrict the availability of federal habeas
> corpus when it enacted the present section 16-
> 1901, we tread carefully. As reviewed above,
> there is a "long tradition of ready access of
> prisoners to federal habeas corpus," Anderson
> [v. Singletary], 111 F.3d [801, 805 (11th Cir.
> 1997)], and we are most reluctant to find that
> Congress has deprived an entire category of
> prisoners of access to an Article III habeas
> remedy without very clear evidence of
> congressional intent.[86]

Applying this same reasoning in the present case, we also

are reluctant to, and do not, conclude that Congress deprived

servicemembers of the right to seek Article III habeas review

after there is "a final judgment as to the legality of the

proceedings" pursuant to Article 71(c) but before there is

executive action taken on the findings and sentence under

Article 71(a) and the case becomes final under Article 76.  We

find no statute expressing clear congressional intent to

establish exclusivity of judicial power in either this Court or

any other federal courts in this situation.  Also it does not

appear that there is a published Article III court case

addressing this issue.[87]

---

[86] Id. at 1043-44.

[87] Goldsmith discussed the relationship between review within the military
system and collateral review by the Article III courts, but this opinion did
not focus on the timing of when a decision becomes final in the military
justice system.  The Goldsmith Court noted:

> [O]nce a criminal conviction has been finally reviewed within
> the military system, and a servicemember in custody has

But our concluding that Article III courts have the power to entertain a writ of habeas corpus or other petitions does not necessarily mean that this eventual review is an adequate remedy at law.  The mere possibility of eventual habeas corpus review in federal civil courts prior to presidential action regarding the death sentence under Article 71(a), is unlikely because of other federal courts' application of the doctrines of exhaustion[88] or abstention.[89]

Earlier in this opinion we rejected the Government assertion that this Court does not have jurisdiction over these two petitions for extraordinary relief.[90]  Similarly we have recognized the power of Article III courts to entertain a writ

---

> exhausted other avenues provided under the UCMJ to seek relief
> from his conviction, he is entitled to bring a habeas corpus
> petition, see 28 U.S.C. § 2241(c), claiming that his
> conviction is affected by a fundamental defect that requires
> that it be set aside.

526 U.S. at 537 n.11 (citations omitted).  But this passage does not tell us whether, for purposes of Article III habeas corpus, a case is final when legal review is completed under Article 71 or when final action is taken on the findings and sentence by an executive branch official.

[88] The exhaustion doctrine applies to both federal and state prisoners who seek to file an application for a writ of habeas corpus to an Article III court.  See 28 U.S.C. §§ 2254, 2255 (2000).

[89] At least one federal court has relied on the doctrine of abstention to avoid addressing issues pending completion of both judicial and administrative actions within the military.  See Lawrence v. McCarthy, 344 F.3d 467 (5th Cir. 2003).  Lawrence involved an Article III challenge to activation of a reservist to face court-martial charges, which implicated the action of military officials and military courts.  The Fifth Circuit, in holding that abstention was appropriate, said:  "The application of Younger [v. Harris, 401 U.S. 37 (1971)], in this case . . . promotes judicial efficiency and conservation of resources by avoiding duplicative proceedings. The need for federal intervention may be obviated entirely simply by allowing the military institution, both judicial and administrative, to run their course." 344 F.3d at 474.

[90] See supra pp. 11-12 (rejecting the position of the Government presented in Brief for Respondents in Opposition at 10-11, Loving v. Hart, 525 U.S. 1040 (No. 98-251)).

of habeas corpus or other petitions.  At this point we simply explain why Article III intervention presently is unlikely (in light of the application of doctrines of exhaustion or abstention) thereby rendering our continued involvement in this case as "necessary or appropriate" under the All Writs Act.

Before a case is final under Article 76, Article III federal courts normally will not be available to consider Petitioner's challenge to his death sentence.[91]  The Supreme Court has made clear that "federal courts typically will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted."[92]

In Noyd,[93] the Supreme Court addressed the purposes of requiring exhaustion of military remedies prior to Article III collateral review.  The Court quoted Justice Douglas, speaking for a unanimous Court in Gusik, to explain some of the important reasons which require civilian courts to respect the integrity of the military system that Congress has established:

---

[91] See generally Richard D. Rosen, Civilian Courts and the Military Justice System:  Collateral Review of Courts-Martial, 108 Mil. L. Rev. 5 (1985).

[92] Schlesinger, 420 U.S. at 758.  See also Gusik, 340 U.S. 128 (establishing the general rule that habeas corpus petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked).

[93] 395 U.S. at 693 (1969) (reaffirming Gusik's exhaustion rule).  The legislative history of the 1983 amendments to the UCMJ supports the Supreme Court's reliance on the doctrine of exhaustion.  See Revision of the Laws Governing the U.S. Court of Military Appeals and the Appeals Process: Hearings on H.R. 6406 and H.R. 6298 Before the Subcomm. on Military Personnel of the H. Comm. on Armed Forces, 96th Cong. 55 (1980), reprinted in Index and Legislative History, Uniform Code of Military Justice 82 (1984).  ("The doctrine of exhaustion of remedies may require the accused to pursue further actions in the military system prior to obtaining review in a federal district court.").

> "An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere. . . . The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts. If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless. The procedure established to police the errors of the tribunal whose judgment is challenged may be adequate for the occasion. If it is, any friction between the federal court and the military or state tribunal is saved. . . . Such a principle of judicial administration is in no sense a suspension of the writ of habeas corpus. It is merely a deferment of resort to the writ until other corrective procedures are shown to be futile." [94]

The Noyd Court noted the need for "a substantial degree of civilian deference to the military tribunals" and specifically referenced our Court's "primary responsibility" for the supervision of military justice.[95]  The Supreme Court stated that this deference to our Court was rooted in both judicial economy (avoiding needless civilian judicial intervention) and respect for our Court's expertise in interpreting the technical provisions of the UCMJ.[96]

Application of either the exhaustion or abstention doctrine by Article III courts is most appropriate in this capital case.

---

[94] 395 U.S. at 693-94 (quoting Gusik, 340 U.S. at 131-32).
[95] Id. at 694-95.
[96] Id. at 696 ("There seems little reason to blaze a trail on unfamiliar ground when the highest military court stands ready to consider petitioner's arguments.").

Because there has not yet been presidential approval of the death sentence, an Article III court would likely view as premature any habeas corpus petition challenging a military death sentence.[97]  Until the President acts, there is the possibility that the issue could be mooted, so that Article III courts should not become involved.  This probable absence of an alternate forum to present his claim, before action by the President, invites this Court to be available to address issues that relate to the lawfulness of the capital sentence.[98]

In addition there are four other important practical factors that support the application of the doctrine of exhaustion in the present situation.  First, Congress gave this Court the authority to conduct a mandatory review of death penalty cases.[99]  Under this authority, this Court remains the primary judicial body with jurisdiction over Petitioner's case, and this Court has authority to reexamine its prior decision in this case.[100]  The factual history of this case, including the

---

[97] See Gusik, 340 U.S. 128; Rosen, supra note 91, at 67-76.

[98] Again, this is not to say that the Article III courts do not have the power to entertain the habeas writ but only that these courts prudently have been reluctant to entertain the writ related to military justice issues because of the exhaustion doctrine.  Of course, collateral review by an Article III is the only judicial forum to address matters outside the scope of military justice.  See Goldsmith, 526 U.S. at 534 (citing Parisi v. Davidson, 405 U.S. 34, 44 n.12 (1972), for the proposition that the "Court of Military Appeals lacked express authority over [a] claim for discharge based on conscientious objector status").

[99] Article 67(a)(1).

[100] The primacy of this Court's position has not been diminished by the establishment of immediate possible certiorari review by the Supreme Court. In fact, Congress, in establishing Supreme Court review of courts-martial and in later amending the UCMJ, repeatedly has emphasized that our Court would continue to exercise primary responsibility for the supervision of military

decision by the Supreme Court in June of 1996 and no presidential action as to the death sentence, reveals that this case could otherwise remain in a legal vacuum for years.  We do not think this is what the Congress intended when it directed this Court to conduct a mandatory review of capital cases.

Second, we note that the scope of federal habeas review is not certain, thereby raising questions as to the capability of federal habeas proceedings to safeguard servicemembers' constitutional rights.[101]  In light of these circumstances, it is our view that the mere possibility of eventual habeas corpus review of uncertain scope in federal civil courts, after the President's action, is an inadequate substitute for this Court's timely consideration of issues challenging the lawfulness of a capital sentence.

Third, Congress has given this Court a mandate to provide direct civilian review over military justice and guidance to other military courts considering capital cases and federal courts with respect to the impact of the recent opinions in Ring, Apprendi, and Wiggins on the military's death penalty

---

law.  See S. Rep. No. 98-53, at 33 (1983), reprinted in Index and Legislative History, Uniform Code of Military Justice 559 (1984)("The Committee intends that the Court of Military Appeals will be the principal source of authoritative interpretations of the law."); H.R. Rep. No. 98-549, at 17 (1980), reprinted in Index and Legislative History, Uniform Code of Military Justice 664 (1984)("The committee is of the opinion that . . . the Court of Military Appeals will remain the primary source of judicial authority under the Uniform Code of Military Justice.").
[101] See Rosen, supra note 91, at 57 n.13.

scheme.[102]  This guidance is of some urgency as there are
presently four death penalty cases under direct review at the
Military Courts of Criminal Appeals, and other pending or
potential capital cases in the offing.

Finally, prior to the President acting on a sentence of
death, pursuant to Article 71(a), the military justice system
must present to the President a case where the findings and
sentence are lawful and there is confidence in the reliability
of the determination of a death sentence.  If legal issues arise
between the conclusion of legal review and final executive
action, it is best that the legal foundation for the President's
action be established by this Court with its expertise in
military justice.[103]  This probable absence of an alternate forum
for a servicemember to present his claim, before action by the
President, invites this Court to be available to address issues
that relate to the lawfulness of the capital sentence.

In summary, these additional four points support our
conclusion that present review by an Article III court is
unlikely.  Accordingly, our review is necessary and proper
because there is no viable alternate judicial forum available

---

[102] See Noyd, 395 U.S. at 696.

[103] Our present judicial review is consistent with our judicial "duty to
search for constitutional error with painstaking care . . . ."  Kyles, 514
U.S. at 422 (quoting Burger, 483 U.S. at 785).  Our review effectuates the
heightened reliability required in capital cases.  See, e.g., Gilmore v.
Taylor, 508 U.S. 333 (1993); California v. Ramos, 463 U.S. 992 (1983);
Woodson v. North Carolina, 428 U.S. 280 (1976).

for Petitioner to present his legal challenges as to the
lawfulness of a capital sentence prior to the President acting
pursuant to Article 71(a).

#### 4. Consideration of other legal remedies that relate to the appropriateness of this Court's present review of Petitioner's claims

In light of these conclusions, this Court must determine
whether there are other adequate remedies at law available
before this or any other Court.  This requires us to address
both the propriety of filing a writ of coram nobis and other
statutory authority that addresses the right of an incarcerated
person to seek habeas relief.

To support his claim for extraordinary relief, Petitioner
presents constitutional challenges to the legality of his
capital sentence:  the Ring Writ relates to the authority of the
President to promulgate R.C.M. 1004 and the voting procedures
for adjudging his capital sentence, and the Wiggins Writ makes a
claim of ineffective assistance of Petitioner's trial defense
counsel.  Procedurally, Petitioner filed two petitions for
extraordinary relief in the nature of a writ of error coram
nobis.  In both of these writs, Petitioner seeks the relief of
setting aside his death sentence, and in neither of these writs
does Petitioner challenge his continued confinement nor seek to
be released from confinement.[104]  In addressing the propriety of

---

[104] Ring Writ, supra note 21, at 37; Wiggins Writ, supra note 23, at 45.

the two petitions, we are obliged to address both the writ of coram nobis and the writ of habeas corpus, because the former is available only when the later is unavailable.

"The 'writ of error coram nobis,' also referred to simply as a 'writ of coram nobis,' evolved in 16th century English common law as a procedural means to remedy judicial wrongs for which there was no other established remedy."[105]  The writ of coram nobis (the Latin phrase literally translates "let the record remain before us") is submitted to the court that imposed the original judgment.[106]

A writ petition submitted to a superior court is a writ of error coram vobis ("before you").[107]  But incorrectly describing the writ is not fatal to a petition, because courts look at the substance of the writ rather than the form.[108]

"Historically, the writ of error coram nobis was distinct from the writ of habeas corpus in that the former dealt with factual errors and the latter with legal errors."[109]  This distinction no longer pertains, as coram nobis has been expanded to encompass constitutional and other fundamental errors.[110] Reflecting its original purpose, a writ of error coram nobis

---

[105] Steven J. Mulroy, The Safety Net:  Applying Coram Nobis Law to Prevent the Execution of the Innocent, 11 Va. J. Soc. Pol'y & L. 1, 9 (2003).

[106] Id.; 2 Steven Childress & Martha Davis, Federal Standards of Review, § 13.01, at 13-4 (3d ed. 1999).

[107] Ex Parte Lange, 85 U.S. 163, 196 (1873).

[108] See Pyles v. Boles, 250 F. Supp. 285, 288 (N.D.W.V. 1966); see also Childress & Davis, supra note 106, at 13-8.

[109] Mulroy, supra note 105, at 10.

[110] Childress & Davis, supra note 106, at 13-2.

remains appropriate when no other remedy is available.[111]  A distinctive feature of this writ is that it alleges no error by the original court or its findings, but invites the original court's attention to new facts or law that were not known to the court at the time and that may change the result.[112]  It "permits a court to remedy errors not perceived or not fully assessed when the case was first before it."[113]  "It may not be used to seek a reevaluation of the evidence or a reconsideration of alleged errors."[114]  The writ encompasses the impact of new law on a decision.[115]

Courts have imposed "a requirement that the movant show that he or she had exercised reasonable diligence in seeking a remedy . . . a requirement that the defendant, exercising reasonable diligence could not have discovered the evidence prior to the original judgment."[116]  "Both at common law and in modern practice, the relief afforded [by the writ] is without limitation of time for facts affecting the validity and regularity of the judgment."[117]  A writ of coram nobis differs

---

[111] Id. at 13-7 (citing United States v. Morgan, 346 U.S. 502, 512 (1954)).
[112] See Frischholz, 16 C.M.A. at 153, 36 C.M.R. at 309; Mulroy, supra note 105, at 10.
[113] Del Prado, 23 C.M.A. at 133, 48 C.M.R. at 749.
[114] Frischholz, 16 C.M.A. at 153, 36 C.M.R. at 309.
[115] Childress & Davis, supra note 106, § 13.01 at 13-2.
[116] Mulroy, supra note 105, at 11; see also Frischholz, 16 C.M.A. at 153, 36 C.M.R. at 309.
[117] Del Prado, 23 C.M.A. at 133, 48 C.M.R. at 749; see also Garrett, 39 M.J. at 295 n.2 ("We are unaware that there are time limits for petitioning for a writ of error coram nobis.")

from a writ of habeas corpus in that it is available to petitioners who are not in custody.[118]

The Supreme Court has had very little to say on coram nobis in the last fifty years.  But we do find helpful the substantive discussion of coram nobis in United States v. Morgan.[119]  In Morgan, the Court established the prevailing rule today -- "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice."[120]  Coram nobis

---

[118] See Garrett, 39 M.J. at 295; Morgan, 346 U.S. at 510 (expressly rejecting the Government assertion that 28 U.S.C. § 2255 "should be construed to cover the entire field of remedies in the nature of coram nobis in federal courts").

[119] 346 U.S. 502.  The Supreme Court held that a state prisoner sentenced as a second offender because of a prior federal conviction could challenge his earlier conviction in the federal case through a writ of coram nobis.  At the outset, the Court defined the issue before it as "whether a United States District Court has power to vacate its judgment of conviction and sentence after the expiration of the full term of service."  Id. at 503.  The Court concluded that federal courts have the power under the All Writs Act to issue writs of coram nobis in criminal cases and that the power extends to district courts.  Having found the writ to be within the district court's powers, the Supreme Court set out to limit the situations in which the writ should be granted.

[120] Id. at 511.  Applying the rule to the facts of Morgan's case, the Supreme Court concluded:

> Where it cannot be deduced from the record whether counsel was
> properly waived, we think, no other remedy being then
> available and sound reasons existing for failure to seek
> appropriate earlier relief, this motion in the nature of the
> extraordinary writ of coram nobis must be heard by the federal
> trial court.  Otherwise a wrong may stand uncorrected which
> the available remedy would right.

Id. at 512.  Giving some additional context to its holding, the Court added the following short paragraph to the end of the opinion:

> Although the term has been served, the results of the
> conviction may persist.  Subsequent convictions may carry

should only be used to remedy "errors 'of the most fundamental

character.'"[121]

In a more recent case, Carlisle v. United States,[122] the

Supreme Court underscored the difficulty of successfully

petitioning for a writ of coram nobis where a specific rule of

criminal procedure provided the applicable law relating to an

issue.  The Court stated, "As we noted a few years after the

enactment of the Federal Rules of Criminal Procedure, 'it is

difficult to conceive of a situation in a federal criminal case

today where [a writ of coram nobis] would be necessary or

appropriate.'"[123]  But we find this guidance less than satisfying

---

> heavier penalties, civil rights may be affected. As the power
> to remedy an invalid sentence exists, we think, respondent is
> entitled to an opportunity to attempt to show that this
> conviction was invalid.

Id. at 512-13.  With this paragraph and the previous discussion of the writ
coram nobis, we believe the Court is defining the more specific parameters
that may permit the filing of a petition for coram nobis relief.  The Court's
opinion can reasonably be read to say that coram nobis is safely available
only:  (1) after the term has been served, (2) there is an error of the most
fundamental character, (3) the consequences or results of the erroneous
conviction persist, (4) no other remedy is available to address the error,
and (5) a writ of coram nobis could remedy those consequences or results.  We
note that Morgan addressed the availability of a writ of error coram nobis to
vacate a conviction after the sentence had been served.  But this decision is
not clear about whether or not a petitioner who is in custody is barred from
all coram nobis relief.

[121] Id. at 512 (quoting United States v. Mayer, 235 U.S. 55, 69 (1914)); see
also United States v. Mandel, 862 F.2d 1067 (1988)(granting of a writ of
error coram nobis in light of a retroactive dispositive change in the law of
mail fraud).

[122] 517 U.S. at 428-29.  In Carlisle, the district court granted the
defendant's motion for judgment of acquittal even though it was filed out of
time.  The Sixth Circuit reversed, and the Supreme Court agreed that the
district court had no authority to enter a post-verdict judgment of acquittal
when the motion was untimely.  Having thus disposed of the main issue in the
case, the Supreme Court quickly dismissed Carlisle's secondary claim -- that
the district court had the power to enter a judgment of acquittal under the
All Writs Act through the writ of coram nobis.

[123] Id. at 429 (quoting United States v. Smith, 331 U.S. 469, 475, n.4 (1947)).

in the present case, for "[u]nlike the practice in the United States Circuit Courts of Appeal and District Courts, neither the UCMJ nor the Manual for Courts-Martial, United States, 1984, provides procedures for collateral, post-conviction attacks on guilty verdicts."[124] So absent a specific rule or statute in the military justice system that pertains to this present situation, we next consider other statutory authority that might be available for Petitioner to obtain the relief that he now requests from this Court.

In federal criminal practice, a motion to vacate the judgment under 28 U.S.C. § 2255 has, for the most part, replaced the writ of coram nobis. However, 28 U.S.C. § 2255 did not abolish the common law writ of error coram nobis, and it is still available under the All Writs Act.[125] For our purposes, it is sufficient to note that coram nobis is analogous to a motion under 28 U.S.C. § 2255 and "the processes developed for treating Section 2255 motions apply as well to coram nobis applications."[126] Similarly, we view the scope of review for coram nobis as equivalent to that for habeas relief under 28

---

[124] United States v. Murphy, 50 M.J. 4, 5 (C.A.A.F. 1998).

[125] Morgan, 346 U.S. at 511.

[126] Childress & Davis, supra note 106, at 13-7; see Morgan, 346 U.S. at 506 n.4 (stating that the writ of coram nobis "is of the same general character as one under 28 U.S.C. § 2255"); see also United States v. Travers, 514 F.2d 1171, 1173 n.1 (2d Cir. 1974)(stating coram nobis and habeas corpus are roughly "similar" proceedings); United States v. Little, 608 F.2d 296, 299 (8th Cir. 1979)(stating coram nobis and habeas corpus are "substantially equivalent" proceedings).

U.S.C. § 2255.[127]  Although this scope is not altogether clear, it is important to note that coram nobis "usually does not include claims raised on direct appeal or habeas if the issues were decided on the merits there."[128]

In the wake of the Supreme Court's holding in Morgan, the question remains as to whether coram nobis relief is available if the petitioner is "in custody" within the meaning of § 2255. This is important because if relief is available under § 2255, thereby making the statutory remedies of that section available to this Petitioner, coram nobis is not available.  The circuit courts are in complete agreement that if the petitioner is "in custody" within the meaning of § 2255, coram nobis relief is unavailable as a matter of law.[129]  This is true whether or not habeas relief is a realistic possibility.  In other words, even if the coram nobis petitioner will be barred from habeas relief

---

[127] Childress & Davis, supra note 106, at 13-7.

[128] Id. at 13-18.

[129] See, e.g., United States v. Esogbue, 357 F.3d 532, 534 (5th Cir. 2004); Obado v. State of New Jersey, 328 F.3d 716, 718 (3d Cir. 2003); Matus-Leva v. United States, 287 F.3d 758, 761 (9th Cir. 2002); United States v. Torres, 282 F.3d 1241, 1245 (10th Cir. 2002); United States v. Johnson, 237 F.3d 751, 755 (6th Cir. 2001); United States v. Barrett, 178 F.3d 34, 54-55 (1st Cir. 1999); Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998); United States v. Brown, 117 F.3d 471, 474-75 (11th Cir. 1997); United States v. Bush, 888 F.2d 1145, 1147 (7th Cir. 1989); United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988); United States v. Little, 608 F.2d 296, 299 n.5 (8th Cir. 1979); Clifton v. United States, 371 F.2d 354, 355 n.2 (D.C. Cir. 1966), overruled on other grounds by Pea v. United States, 397 F.2d 627 (D.C. Cir. 1967).

due to time limits, the rules on successive petitions, or other limitations of § 2255, coram nobis is still not available.[130]

Interestingly, military courts have not fully addressed or decided the "in custody" issue.[131] This Court's coram nobis decisions have involved petitioners both in and out of custody but it does not appear that there is any case where the "in custody issue" was treated as dispositive.[132]

But we need not resolve whether coram nobis relief is available if the petitioner is "in custody" within the meaning of § 2255, for there is another basis for our concluding that the statutory remedies of that section are not available to this Petitioner. The plain language of § 2255 does not speak to the power of this Court to address Petitioner's challenges to his court-martial.[133]

This statute states in part that "A prisoner . . . may <u>move the court which imposed the sentence</u> to vacate, set aside or

---

[130] <u>See, e.g.</u>, <u>Matus-Leva</u>, 287 F.3d. at 761 ("Matus-Leva's argument that a § 2255 petition is not really available to him because it is time barred under the Antiterrorism and Effective Death Penalty Act [AEDPA], is unavailing. A petitioner may not resort to coram nobis merely because he has failed to meet the AEDPA's gatekeeping requirements."); <u>Johnson</u>, 237 F.3d at 755 (denying coram nobis relief even though habeas relief was time-barred); <u>Malave v. United States</u>, 134 F. Supp. 2d 1019, 1021 (E.D. Wis. 2001) ("[C]oram nobis is not available as a 'safety valve' to relieve Section 2255 petitioners of the consequences of their procedural missteps.").

[131] <u>Krause</u>, 7 M.J. at 429 (Perry, J., dissenting) (expressing the view that this Court has authority under 28 U.S.C. § 2255 to entertain a writ of coram nobis but the Court should treat it as a writ of habeas corpus).

[132] A lower military court acknowledges that "the U.S. Supreme Court [has] held that the ancient writ of coram nobis [is] available in criminal cases . . . when the petitioner [has] completed his sentence and [is] no longer in custody for purposes of seeking habeas corpus relief." <u>Johnson v. United States</u>, 49 M.J. 569, 571 (N-M. Ct. Crim. App. 1998).

[133] <u>But see</u> <u>Krause</u>, 7 M.J. at 429 (Perry, J., dissenting).

correct the sentence."[134]  In the military justice system there are no standing courts, so the court that imposed Petitioner's death sentence is no longer in existence.[135]  Also because this Court was not the sentencing court, it similarly is not a "court which imposed the sentence" within the meaning of § 2255.  Any attempt of a servicemember to avail himself of § 2255 in this Court is obviously futile because the statute permits the sentencing court to "make findings of fact" and this Court has no factfinding power.[136]  We decline any invitation to fit a 28 U.S.C. § 2255 square peg into an Article 67 round hole.  We find that 28 U.S.C. § 2255 is not pertinent.  Because Petitioner cannot presently obtain habeas review under this statute, we cannot rely on it to render his petition for a writ of coram nobis unavailable.

Next we address whether Petitioner can seek habeas under 28 U.S.C. § 2241.  This statute states:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.  The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had."[137]

---

[134] 28 U.S.C. § 2255 (emphasis added).

[135] Gilliam v. Bureau of Prisons, 208 F.3d 217, No. 99-1222, 2000 U.S. App. LEXIS 3684, at *3, 2003 WL 268491, at *1 (8th Cir. Mar. 10, 2000)(decision without published opinion, reported in full in electronic databases)("Strictly speaking, a person convicted in a court-martial proceeding may not file a section 2255 challenge in the court of conviction because, following conviction, that court ceases to exist.").

[136] Article 67(c) states, "The Court of Appeals for the Armed Forces shall take action only with respect to matters of law."

[137] 28 U.S.C. § 2241 (2000).

We conclude that the plain words of this statute also do not speak to the power of this Court to address Petitioner's challenges to his court-martial. By the plain words of this statute, neither this Court nor any judge of this Court is empowered to act.[138] This Article I court is not mentioned by name, and the judges of this Article I court are not circuit judges.[139]

Finally, any action by this Court or a judge of this Court directing any habeas petition to an Article III court pursuant to this statute would most likely not accomplish the purpose of the statute of obtaining habeas review because the district court would decline to proceed on exhaustion or abstention grounds pending the case becoming final within the military justice system. Thus, we conclude that a petition before this Court for a writ of habeas corpus filed pursuant 28 U.S.C. §

---

[138] See Callwood v. Enos, 230 F.3d 627, 632-34 (3d Cir. 2000)(explaining how prior to a 1984 act of Congress the District Court of the Virgin Islands lacked 28 U.S.C. § 2241 habeas corpus jurisdiction because it was not a "District Court" established under Article III); see also Joseph v. de Castro, 805 F. Supp. 1242 (D.V.I. 1992)(holding that the District Court of the Virgin Islands may not entertain a habeas motion brought pursuant to 28 U.S.C. § 2241), superseded by statute, 48 U.S.C. § 1613. The court in de Castro explained in part: "Because the District Court of the Virgin Islands is not an Article III court, but rather is established under Article IV, § 3 of the United States Constitution which gives Congress plenary power to regulate [the Territory belonging to the United States], its general jurisdiction is congressionally mandated." 805 F. Supp. at 1248 n.6.
[139] See 28 U.S.C. § 451 (2000); United States Navy-Marine Corps Court of Military Review v. Cheney, 29 M.J. 98 (C.M.A. 1989).

2241 is not a viable remedy thereby rendering relief under coram nobis unavailable.[140]

5.  This Court may issue a writ of habeas corpus under the All Writs Act in this death penalty case; therefore a coram nobis writ is not appropriate

Eliminating possible alternative relief under 28 U.S.C. §§ 2241 and 2255 does not mean that the coram nobis pleading is proper.  Deciding that these two statutes are not pertinent to the power of this Court to issue writs, therefore, permits this Court to look to the All Writs Act -- our "residual source of authority to issue writs."[141]  We conclude that there is a proper basis to permit Petitioner to file a writ of habeas corpus under 28 U.S.C. § 1651(a).

As stated earlier, there is no question that this Court is empowered under the All Writs Act to grant extraordinary relief where appropriate.  The writ of habeas corpus is available to the military accused and may be filed in this Court under the All Writs Act, 28 U.S.C. § 1651(a), because the Supreme Court

---

[140] We note that the Government has previously asserted that this Court has no jurisdiction to act under 28 U.S.C. § 2241(a). See Jones v. Ignatius, 18 C.M.A. 7, 8, 39 C.M.R. 7, 8 (1968).  This statute affords a servicemember who is "in custody" the right to seek Article III collateral review. See Witham v. United States, 355 F.3d 501 (6th Cir. 2004); Gilliam, No. 99-122, 2000 U.S. App. LEXIS 3684, at *6-*7, 2000 WL 268491, at *3 (citing Goldsmith, 526 U.S. at 527 n.11).  A case illustrating the Article III collateral review is Monk v. Zelez, 901 F.2d 885 (10th Cir. 1990).  The case originated in the District of Columbia Circuit as a challenge to the discharge and deprivation of pay based upon an allegedly illegal court-martial conviction.  The district court provided relief and the circuit court held that it should have been viewed as a habeas petition, and as such should have been brought in the jurisdiction in which the petitioner was confined. Monk v. Sec'y of the Navy, 793 F.2d 364 (D.C. Cir. 1986).  The case was filed in Kansas, and the Tenth Circuit provided habeas relief based upon an improper reasonable doubt instruction.

[141] Carlisle, 517 U.S. at 429.

has expressly addressed this issue and blessed our issuing the "Great Writ."[142]  The Supreme Court stated, "[W]e do not believe that there can be any doubt as to the power of the Court of Military Appeals to issue an emergency writ of habeas corpus in cases, like the present one, which may ultimately be reviewed by the court."[143]  This statement of the Supreme Court reaffirms the conclusion that a writ of habeas corpus is unavailable under 28 U.S.C. §§ 2241 and 2255, because had either of these statutes authorized habeas relief, the Supreme Court would not have relied on the All Writs Act, 28 U.S.C. § 1651(a) to support this Court's exercise of judicial power under Noyd.  With this clear precedent before us that this Court may grant a writ of habeas corpus to address the issues raised in the two extraordinary writs filed in the present case, we conclude that coram nobis is not appropriate.  Regarding the writ of habeas corpus, the Supreme Court has stated:

> [T]he scope and flexibility of the writ [of habeas corpus] -- its capacity to reach all manner of illegal detention -- its ability to cut through barriers of form and procedural mazes -- have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.[144]

---

[142] Noyd, 395 U.S. at 695 n.7 (1969); Courtney v. Williams, 1 M.J. 267 (C.M.A. 1976).  See generally Daniel J. Wacker, The "Unreviewable" Court-Martial Conviction:  Supervisory Relief under the All Writs Act from the United States Court of Military Appeals, 10 Harv. C.R.-C.L. L. Rev. 33 (1975).
[143] See Noyd, 395 U.S. at 695 n.7.
[144] Harris v. Nelson, 394 U.S. 286, 291 (1969).

Because of the present availability of "the Great Writ"[145] under 28 U.S.C. § 1651(a), Petitioner cannot properly file a writ coram nobis here.

### 6.  Petitioner has shown "good cause" for filing the present pleadings at this Court

Although we have established that our issuing a writ of coram nobis presently is not appropriate, we must acknowledge that in Garrett,[146] this Court recognized its power to entertain a writ of error coram nobis to address "constitutional and other fundamental errors."[147]  But this Court did not discuss the relationship between habeas corpus and coram nobis.  Because of this omission, we decline to follow Garrett and perpetuate the life of a writ of coram nobis where the petitioner is "in custody" and a writ of habeas corpus is available to Petitioner to present issues to this Court.

Also in light of the authority in Garrett and this Court's long history of entertaining the distinctive coram nobis writ,[148]

---

[145] Id. at 290.
[146] 39 M.J. 293.
[147] Id. at 295.  In this case we rejected the Government assertion that the writ of error coram nobis would not lie to correct an error of law.
[148] See, e.g., Garrett, 39 M.J. 293; Del Prado, 23 C.M.A. 132, 48 C.M.R. 748; Frischholz, 16 C.M.A. 150, 36 C.M.R. 306.  We note that the legislative history of the UCMJ reflects that the new trial provisions of Article 73, UCMJ, 10 U.S.C. § 873 (2000), incorporated the writ of coram nobis to address a fraud on the court.  In a hearing that examined Article 73, the Department of Defense witness, Felix Larkin explained, "What we did was to combine what amounts to a writ of error coram nobis with the motion for a new trial on newly discovered evidence.  We have provided for both of them and to our

we are not inclined to find any defect in Petitioner's pleadings because Petitioner relied on our past practice and these pleadings to assert both constitutional and fundamental errors. Instead we must address whether Petitioner's filing of these two additional writs at this Court was proper.

The Government's response to the Ring Writ asks this Court to exercise its discretion and dismiss the petition without a decision on its merits, because it was not first filed at the court below.[149]  The Government is correct that the decision of this Court to entertain these writs is a matter within our discretion.  Rules of Practice and Procedure, United States Court of Appeals for the Armed Forces (C.A.A.F. R.) 4(b)(1) provides:

> The Court may, in its discretion, entertain original petitions for extraordinary relief including, but not limited to, writs of mandamus, writs of prohibition, writs of habeas corpus, and writs of error coram nobis.  See 28 USC § 1651(a) and Rules 18(b), 27(a) and 28.  Absent good cause, no such petition shall be filed unless relief has first been sought in the appropriate Court of Criminal Appeals. Original writs are rarely granted.

---

minds they are the only additional circumstances over and above the appeal that need a remedy."  Uniform Code of Military Justice:  Hearings on H.R. 2498 Before a Subcomm. of the H. Comm. on Armed Forces, 81st Cong. 1211 (1949), reprinted in Index and Legislative History, Uniform Code of Military Justice (1950) (not separately paginated).  We do not read this history (reflecting the incorporation of a writ of coram nobis into Article 73, to address fraud on the court as the basis for a new trial), as excluding the writ of coram nobis as a means to raise other issues relating to "constitutional and other fundamental errors."

[149] Answer to Ring Writ at supra note 26, at 6-7.

C.A.A.F. R. 18(b) repeats the first sentence of C.A.A.F. R. 4(b)(1). C.A.A.F. R. 33 permits this Court to suspend any of the other rules for good cause shown.

In the present case, we find Petitioner has shown "good cause" for filing the two original petitions at this Court. The issues raised by Petitioner go to the lawfulness of this Court's prior judgment, raise important constitutional claims, and relate to this Court's statutory duty to review a death sentence. Also we have considered the futility of any filing at the lower court, as it would remain bound by the previous decisions of this Court and the Supreme Court.[150] Nonetheless we also have found that the writ of coram nobis is an inappropriate procedural vehicle for petitioner to challenge the legality of his death sentence because a writ of habeas corpus is the proper pleading. Because the writ of habeas corpus is available to Petitioner to address his challenges to his death sentence, we proceed to address the final threshold issue.

C. Are the latest petitions an abuse of the writ?

"The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent

_____

[150] See ABC, Inc. v. Power, 47 M.J. 363, 364 (C.A.A.F. 1997); Garrett, 39 M.J. at 295 (deciding the merits of the petition and granting relief after earlier affirming the decision below, without specifically addressing the petitioner's failure to seek relief from the court below). See also Eugene R. Fidell, Guide to the Rules of Practice and Procedure for the United States Court of Appeals for the Armed Forces, 28-29 (11th ed. 2003)(making several references to this Court's willingness on occasion to consider writs not filed in the lower courts).

petition for a writ of habeas corpus."[151]  At common law,
successive petitions raising the same issues were permitted.
Res judicata did not attach to a court's denial of habeas
relief.[152]  By judicial decision[153] and statutory enactment,[154]
limits on successive petitions have now been imposed.

This Court is not precluded from considering the present
petitions under the abuse of the writ doctrine because the
Government has not carried its burden of pleading abuse of the
writ.[155]  In neither of the answers to the two petitions has the
Government raised this issue.  Therefore, we will not apply it
in this case.[156]

---

[151] McCleskey v. Zant, 499 U.S. 467, 470 (1991).
[152] See id. at 478-89 (tracing the history of federal habeas corpus law).
[153] In McCleskey, the Supreme Court adopted a "cause and prejudice analysis."
The Court described that analysis as follows:

> When a prisoner files a second or subsequent application, the
> government bears the burden of pleading abuse of the writ.  The
> government satisfies this burden if, with clarity and particularity, it
> notes petitioner's prior writ history, identifies the claims that
> appear for the first time, and alleges that petitioner has abused the
> writ.  The burden to disprove abuse then becomes petitioner's.  To
> excuse his failure to raise the claim earlier, he must show cause for
> failing to raise it and prejudice therefrom as those concepts have been
> defined in our procedural default decisions . . . . If petitioner
> cannot show cause, the failure to raise the claim in an earlier
> petition may nonetheless be excused if he or she can show that a
> fundamental miscarriage of justice would result from a failure to
> entertain the claim.

499 U.S. at 494-95.
[154] See id.  Sections 105 and 106 of the Antiterrorism and Effective Death
Penalty Act amended 28 U.S.C. §§ 2255 and 2244, respectively, and created a
default rule requiring courts to dismiss second or successive petitions
except in certain limited circumstances.
[155] See McCleskey, 499 U.S. at 494-95.
[156] Moreover, we observe that our decision not to apply the abuse of the writ
doctrine in the present case is supported by two other reasons.  First, abuse
of the writ normally applies to petitions for a writ of habeas corpus.  It is
rooted in concerns for federalism and comity, neither of which are applicable
to this Court's review of its own prior decision in the context of a writ of

But this conclusion does not terminate our consideration of the application of this doctrine.  We also must consider whether our present consideration of these petitions may result in a later application of the abuse of the writ doctrine by an Article III court.

The Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. 2244(b) (2000), is a "modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'"[157]  AEDPA provides that "[a] claim in a second or successive habeas corpus application under Section 2254 that was presented in a prior application shall be dismissed."[158]  It also provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed" except in two circumstances.[159]  Although 28 U.S.C. § 2244 applies to a "person in custody pursuant to the judgment of a State court," the same general principles apply to applicants under 28 U.S.C. § 2255 who are federal prisoners.[160]

But it is uncertain whether the same general principles relating to abuse of the writ apply to applications under 28 U.S.C. § 1651 to this Article I court.  We note that there is

coram nobis before a capital case is final under Article 76.  Second, the exhaustion doctrine that applies to court-martial proceedings as a prerequisite to filing a habeas corpus petition invites both of Petitioner's present filings.

[157] Felker v. Turpin, 518 U.S. 651, 664 (1996).
[158] 28 U.S.C. § 2244(b)(1).
[159] 28 U.S.C. § 2244(b)(2).
[160] See Sanders v. United States, 373 U.S. 1 (1963).

authority that establishes that the "the gatekeeping provisions of AEDPA, as set forth in 28 U.S.C. § 2244, do not apply to all habeas petitions, nor are all multiple collateral attacks second or successive."[161] The application of these legal principles of abuse of the writ to military justice capital jurisprudence is an issue of first impression.

Absent controlling legal authority on this issue, it is not clear whether our entertaining a petition for a writ of habeas corpus would trigger the AEDPA "second or successive writ" language and thereby preclude an Article III court collateral review under the doctrine of abuse of the writ. Petitioner had no clear notice by controlling legal authority that the principles of abuse of the writ applied to his earlier filing of any writ petition at this Court or that his filing a writ petition at this Court could be considered the predicate for the Government later asserting abuse of the writ if Petitioner

---

[161] Barapind v. Reno, 225 F.3d 1100, 1111 (9th Cir. 2000) (concluding that "[b]ecause § 2244(b) makes no reference to habeas petitions filed under § 2241, but rather, applies only to petitions filed pursuant to 28 U.S.C. § 2254, the prior-appellate-review provisions of § 2244(b) do not apply to habeas petitions filed under § 2241"); see also Felker, 518 U.S. at 662; Valona v. United States, 138 F.3d 693, 694 (7th Cir. 1998). By their terms neither of these "gatekeeping provisions" applies to petitions filed under § 2241; In re Hanserd, 123 F.3d 922, 930 (6th Cir. 1997) ("A § 2241 motion would not be barred by the new restrictions on successive motions and petitions."). Because § 2241 potentially allows a petitioner to evade these requirements, however, courts have attempted to define circumstances under which AEDPA's new gatekeeping rules will bar a second or successive petition filed under § 2241. See, e.g., Charles v. Chandler, 180 F.3d 753, 757 (6th Cir. 1999) (holding that a petitioner will receive "only one bite at the post-conviction apple" unless he can show either that he has newly discovered evidence or that a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable applies); Barrett, 178 F.3d 34 (allowing a petitioner asserting a claim of actual innocence to use § 2241 to circumvent the gatekeeping provisions).

eventually seeks habeas review in an Article III court.  In light of this uncertainty, we are reluctant presently to entertain the present petitions.

## V.  Conclusion

This Court has the option to treat Petitioner's erroneously filed coram nobis petitions simply as petitions for habeas corpus.  This would afford us the opportunity to consider the essence of his complaints of error without controlling reference to the label or title of his pleadings.  But we decline to do so.

First, we find the rationale of the Tenth Circuit persuasive because it concluded that it is error to treat an erroneously filed coram nobis petition as a petition for habeas corpus.[162]  In Carpenter, the court stated:

> [T]his Court, like many of our sister circuits, has held that a district court may only recharacterize a prisoner's non § 2255 motion as a § 2255 petition if (1) the prisoner, "with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized," or (2) the district court, having concluded that [a habeas petition] is the appropriate mechanism for asserting the claim, gives the prisoner "the

---

[162] See United States v. Carpenter, 24 F. App'x 899, 901 (10th Cir. 2001)(unpublished) (stating that the district court erred in recharacterizing a coram nobis petition as a habeas petition).  But see Sinclair v. Louisiana, 679 F.2d 513, 515 (5th Cir. 1982)(stating that the Court will treat the writ of error coram nobis as an application for writ of habeas corpus); Goldstein v. United States Parole Comm'n, 940 F. Supp. 1505, 1509 (D. Cal. 1996)(acknowledging that because "federal courts have a responsibility to construe liberally pro se prisoners' pleadings as habeas corpus petitions where the interests of justice demand[,] . . . this Court will treat petitioner's motion for writ of error coram nobis as a petition for writ of habeas corpus.")

> opportunity to withdraw the motion rather than
> have it so recharacterized."[163]

In the capital case presently before our Court, we will
follow the prudent approach presented in Carpenter. Presently
there is no evidence in the record indicating that Petitioner
was informed of the potential adverse consequences associated
with recharacterizing his coram nobis petitions as habeas
petitions nor has this Court previously offered Petitioner an
opportunity to withdraw his petitions and present them as
petitions for a writ of habeas corpus. Our present decision and
opinion serves both these purposes by simply following the
guidance presented in Carpenter of denying the petition and
advising Petitioner that he may file a habeas petition.[164]

Second, our reluctance to recharacterize Petitioner's
pleadings acknowledges and respects Petitioner's right to
address with his counsel the option to file a habeas corpus
petition at this Court and its potential consequences. In this
regard we consider this wise and prudent advice relevant to that
discussion: "The careful and effective litigator, on either
side of postconviction litigation, measures the success of any
maneuver at least in part by it tendency to hold open, rather

---

[163] Carpenter, 24 F. App'x at 904 (citing United States v. Kelly, 235 F.3d 1238, 1242 (10th Cir. 2000)(citation and quotation marks omitted); United States v. Lowe, 6 F. App'x 832, 836 (10th Cir. 2001).
[164] Carpenter, 24 F. App'x at 904; see, e.g., Birkett v. United States, No. 99 CV 1729(RR), 1999 U.S. Dist. LEXIS 14660, at *7-*8, 1999 WL 754151, at *3 (E.D.N.Y. Aug. 19, 1999).

than to close, the door to further arguments at later stages of the proceedings."[165]

We are mindful that a habeas petition filed before this Court could affect Petitioner's right and strategy to raise both the issues currently presented and later identified issues that either were not or could not have been included in an earlier application.[166] Our declining to recharacterize Petitioner's coram nobis petitions as a habeas petition thereby avoids any of these problematic concerns that could have an effect upon a habeas petition if eventually filed in an Article III court.

## Decision

Accordingly, this Court dismisses both petitions for a writ coram nobis without prejudice for Petitioner to refile a writ of habeas corpus with this Court.

---

[165] Larry W. Yackle, Postconviction Remedies 528 (1981).
[166] Id.

CRAWFORD, Judge (concurring in the result):

I agree that the writ of coram nobis should be dismissed.