RYAN, Judge,
(dissenting):
I. Introduction
Direct judicial review of this case was completed in 1996 upon affirmation of Petitioner Loving’s conviction by both this Court and the Supreme Court. United States v. Loving (Loving I), 41 M.J. 213 (C.A.A.F.1994); Loving v. United States (Loving II), 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). In 2005, this Court considered and rejected Loving’s petition for a writ of error coram nobis, but suggested that it could and would entertain a petition for a writ of habeas corpus. Loving v. United States (Loving III), 62 M.J. 235, 256 (C.A.A.F.2005). In *21 2006, the Court entertained the present petition and ordered an evidentiary hearing.[1] Loving v. United States (Loving IV), 64 M.J. 132, 132 (C.A.A.F.2006).
The majority now rules on the merits of this petition, and determines that it should be denied. Loving v. United States (Loving V), 67 M.J. at 2-3 (C.A.A.F.2009). To reach this conclusion, the majority entertains a ha-beas corpus petition for a case in which direct review is complete. This Court lacks jurisdiction to hear such a petition. Rather, jurisdiction falls squarely within the authority of Article III courts, both by statute and historic practice. I would dismiss the petition for lack of jurisdiction and, therefore, respectfully dissent.
II. The Jurisdiction Fiction: Loving III
The assumption of jurisdiction made by this Court in 2005 and echoed today was not based on any statute authorizing us to conduct habeas review of a case in which direct review has been completed. And it was made despite clear statutory jurisdiction over such eases by Article III courts. The labyrinthine reasoning that underlies the 2005 conclusion that this Court had jurisdiction is unsustainable. See infra at 5-8.
To the extent review of a case in which direct review is complete may be undertaken by this Court at all, the Supreme Court’s recent decision in United States v. Denedo clarifies that such jurisdiction rests on the nature of the writ in question; it must constitute “direct review” of the original case under Article 67, UCMJ, and not rely on a general notion of continuing jurisdiction over cases where we once had jurisdiction. — U.S.-, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009). Compare id. at 2221 (distinguishing jurisdiction over a eoram nobis petition — “a belated extension of the original proceeding,” dependent entirely upon whether there was jurisdiction over the original proceeding under Articles 66 and 67, UCMJ — and a habeas corpus petition, “‘a separate civil proceeding’ ” (quoting United States v. Morgan, 346 U.S. 502, 505 n. 4, 74 S.Ct. 247, 98 L.Ed. 248 (1954))); with Loving III, 62 M.J. at 250 (“Congress gave this Court the authority to conduct a mandatory review of death penalty cases. Under this authority, this Court remains the primary judicial body with jurisdiction over Petitioner’s case, and this Court has authority to reexamine its prior decision in this case.”). Even if the relevant statutes and historic practice did not clearly establish that Article III courts, and not this Court, have jurisdiction over this habeas petition, Denedo compels that conclusion. See infra pp. 5-6.
A. This Court Has No Jurisdiction Over This Habeas Petition Under Article 67, UCMJ
This Court’s jurisdiction is strictly defined by Congress in Article 67, UCMJ. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (“ ‘Courts created by statute can have no jurisdiction but such as the *22 statute confers.’ ” (quoting Sheldon v. Sill, 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850))). Although created to oversee the military justice system, this Court is limited in both the types of cases it may review and the extent to which it may review them. See Article 67(c), UCMJ (“[T]he Court of Appeals for the Armed Forces may act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals.”); Denedo, 129 S.Ct. at 2223 (emphasizing that C.A.A.F.’s jurisdiction is limited by Article 67, UCMJ); Clinton v. Goldsmith, 526 U.S. 529, 535-37, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999) (C.A.A.F.’s “jurisdiction is narrowly circumscribed_ [It] is accorded jurisdiction by statute (so far as it concerns us here) to ‘review the record in [specified] cases reviewed b/ the [CCAs].... [T]he CAAF spoke too expansively when it held itself to be ‘empowered by the All Writs Act to grant extraordinary relief in a case in which the court-martial rendered a sentence that constituted an adequate basis for direct review’ _” (citations omitted)).
Following direct review by this Court, an accused may petition the Supreme Court for review. Article 67a, UCMJ, 10 U.S.C. § 867a (2006). After the Supreme Court has acted on that petition, the “judgment as to the legality of the proceedings is final,” ending direct judicial review. Article 71(c), UCMJ, 10 U.S.C. § 871 (2006); accord Rule for Courts-Martial (R.C.M.) 1209(a). The Supreme Court’s affirmation of Loving’s conviction in 1996 marked the end of direct judicial review in this case. See Article 71(c), UCMJ; Loving IV, 64 M.J. at 137.
After direct judicial review is complete in a capital case, the military justice system provides three possible extra-judicial remedies that stand between an accused and the carrying-out of his sentence: a successful petition to the Judge Advocate General for a new trial under Article 73, UCMJ, 10 U.S.C. § 873 (2006); action taken by a service secretary under Article 74, UCMJ, 10 U.S.C. § 874 (2006); and presidential approval or commutation of the capital sentence under Article 71(a), UCMJ. While the availability of these extra-judicial remedies may impact the res judicata effect of judgments under Article 76, UCMJ, 10 U.S.C. § 876 (2006), it does not change the fact that direct judicial review is complete.
In contrast with the direct judicial review authorized and dictated under Articles 66 and 67, UCMJ, and R.C.M. 1201-1205 and 1209, no statutory authority, guidance, or process for collateral review by this Court exists once direct review has been completed.[2] See Noyd v. Bond, 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969) (distinguishing between this Court’s power to issue a writ of habeas corpus in cases “like the present one [a case pending direct review], which may ultimately be reviewed by [the] Court” and “a case which the [Court] is not authorized to review under the governing statutes”);[3] Burns v. Wilson, 346 U.S. 137, *23 141, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953) (plurality opinion) (recognizing a petition for a new trial as the only mechanism within the military justice system, apart from ordinary appellate review, to collaterally attack a judgment); United States v. Murphy, 50 M.J. 4, 5-6 (C.A.A.F.1998) (recognizing the absence of rules or procedures for post-conviction collateral attacks in the military justice system and thus reviewing an ineffeetive-assistance-of-counsel claim on direct review); Witham v. United States, 355 F.3d 501, 505 (6th Cir.2004) (“[Njeither the [UCMJ] nor the Manual for Courts-Martial provides for collateral review within the military courts.”); Gilliam v. Bureau of Prisons, 2000 U.S.App. LEXIS 3684, at *4, 2000 WL 268491, at *2 (8th Cir. Mar. 10, 2000) (“ ‘Unlike the practice in the United States Circuit Courts of Appeal and District Courts, neither the UCMJ ... nor the Manual for Courts-Martial ... provides procedures for collateral, post-conviction attacks on guilty verdicts.’” (quoting Murphy, 50 M.J. at 5)).
B. Article III Courts Have Jurisdiction Over This Habeas Petition
Article III courts, though, have clear statutory jurisdiction and authority to collaterally review convictions by petitioners held in custody when constitutional error is alleged. See 28 U.S.C. § 1331 (2006) (providing Article III district courts with original jurisdiction over federal questions); id. § 2241(a) (“Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.”); id. § 2241(c)(3) (extending writ of habeas corpus to prisoners “in custody in violation of the Constitution or laws or treaties of the United States”); Denedo, 129 S.Ct. at 2226 n. 1 (Roberts, C.J., dissenting) (recognizing that court-martial convictions may be collaterally attacked in an Article III court, which has jurisdiction under §§ 1331 and 2241); Goldsmith, 526 U.S. at 537 n. 11, 119 S.Ct. 1538 (1999) (“[0]nce a criminal conviction has been finally reviewed within the military system, ... [a servicemember] is entitled to bring a habeas corpus petition, see 28 U.S.C. § 2241(c), claiming that his conviction is affected by a fundamental defect that requires that it be set aside.”); Burns, 346 U.S. at 139, 73 S.Ct. 1045 (plurality opinion) (recognizing that the federal civil courts have jurisdiction over habeas corpus petitions and that “[b]y statute Congress has charged them with the exercise of that power” (citing § 2241; In re Yamashita, 327 U.S. 1, 8, 66 S.Ct. 340, 90 L.Ed. 499 (1946))).
And while the statutes are already clear regarding the court system to which a habe-as corpus petition should be addressed after direct review is complete, it is further instructive that Article III courts have been collaterally reviewing court-martial convictions where direct review has been completed since at least the mid-1800s. See Ex parte Reed, 100 U.S. 13, 19-23, 25 L.Ed. 538 (1879) (entertaining a habeas corpus petition alleging that a military court-martial lacked jurisdiction over the petitioner). Since that time, debate has focused not on to whom the writ should be addressed, but rather on the appropriate procedures, claims, and standards of review for collaterally attacking court-martial convictions in federal court. See, e.g., Gusik v. Schilder, 340 U.S. 128, 131, 71 S.Ct. 149, 95 L.Ed. 146 (1950) (requiring exhaustion of military remedies before allowing collateral review in federal courts); Burns, 346 U.S. at 142, 73 S.Ct. 1045 (plurality opinion) (recognizing collateral review of constitutional claims that have not been “fully and fairly” considered by the military justice system); Schlesinger v. Councilman, 420 U.S. 738, 749-53, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) (holding that Article 76, UCMJ, does not affect the jurisdiction of Article III courts or insulate military convictions from collateral review in federal court). By comparison, only since the mid-1960s has this Court in any way asserted the power of collateral review over final convictions. See *24 United States v. Frischholz, 16 C.M.A. 160, 152-53, 36 C.M.R. 306, 308-09 (1966) (holding that the All Writs Act empowers this Court to issue a post-conviction writ of coram no-bis).
C. The All Writs Act Cannot And Does Not Give This Court Jurisdiction Where None Exists Under Article 67, UCMJ
Despite the absence of express statutory-jurisdiction to entertain a habeas corpus petition, this Court in 2005 found that it had such authority under the All Writs Act, 28 U.S.C. § 1651, based on our prior direct review jurisdiction under Article 67, UCMJ. Loving III, 62 M.J. at 245-46, 250; cf. Loving V, 67 M.J. at 4 (asserting that cases pending presidential action remain subject to extraordinary writ consideration by this Court). To do so, the Court distinguished Goldsmith, where the Supreme Court held that this Court erred by directing the Air Force not to drop a servicemember from its rolls (an administrative action), stating this Court was “not given authority, by the All Writs Act or otherwise, to oversee all matters arguably related to military justice.” 526 U.S. at 536, 119 S.Ct. 1538. The Loving III Court found Goldsmith inapplicable because unlike that case, it reasoned, Loving III involved a finding and sentence imposed by a court-martial that was not final under Article 76, UCMJ, such that the extraordinary relief requested would be in aid of the Court’s direct review jurisdiction under Article 67, UCMJ. Loving III, 62 M.J. at 246.
But Article 76, UCMJ, does not change the fact that direct review is complete. Article 76, UCMJ, codifies the common-law principle of finality of judgments; it neither expands nor contracts the subject-matter jurisdiction of either this Court, Denedo, 129 S.Ct. at 2221, 2223 (emphasizing that the principle that Congress decides federal courts’ jurisdiction “applies with added force to Article I tribunals” and noting that Article 76, UCMJ, sets out a rule of finality rather than a jurisdictional bar), or Article III courts, Councilman, 420 U.S. at 749, 95 S.Ct. 1300. See also Loving III, 62 M.J. at 247 (recognizing that the President’s approval or commutation of the death sentence “is not part of the direct judicial review of the ease”).
Even more curiously, the Loving III Court explicitly recognized that it was empowered to act by neither the general federal habeas statute, § 2241, nor by any other congres-sionally enacted habeas corpus statute. 62 M.J. at 255 (noting that the plain language of §§ 2241 and 2255 did not include this Court). The Court nonetheless went on to determine that the All Writs Act — a residual source of writ authority in aid of existing jurisdiction— authorized it to issue the writ in aid of its former direct review jurisdiction. Id. at 256. See generally Article 67(a)(1), UCMJ (providing for mandatory review of “all cases in which the sentence, as affirmed by a Court of Criminal Appeals, extends to death”).
Supreme Court precedent addressing this Court’s authority under the All Writs Act, however, makes clear this holding was in error. Although the Supreme Court has confirmed that this Court may sometimes issue writs under the Act, its interpretation of the scope of the Act and of our jurisdiction demonstrates that the Act does not authorize this Court to entertain a collateral attack through a habeas corpus petition that is not part of the direct review authorized by statute. See Noyd, 395 U.S. at 695 n. 7, 89 S.Ct. 1876 (noting that although there was no longer “any doubt as to the power of the Court of Military Appeals to issue an emergency writ of habeas corpus” under the All Writs Act, the power was recognized only for cases “which may ultimately be reviewed by th[e] court” and not cases “which the [court] is not authorized to review under the governing statutes”).
In Goldsmith, the Supreme Court made it clear that jurisdiction on direct review of a court-martial conviction does not establish jurisdiction for all potential post-conviction remedies. 526 U.S. at 536, 119 S.Ct. 1538. Reversing this Court’s decision, the Supreme Court stated that this Court could not always “act as a plenary administrator even of criminal judgments it has affirmed.” Id. (emphasis added). The Supreme Court noted our opinion “spoke too expansively” when it decided that former jurisdiction over the ac- *25 eused’s court-martial conviction triggered the provisions of the All Writs Act. Id.
Likewise, in Denedo the Supreme Court reaffirmed that the authority granted under the All Writs Act “does not determine the anterior question whether military courts have jurisdiction to entertain a petition for [extraordinary relief].” 129 S.Ct. at 2221. The Act itself is “not a source of subject-matter jurisdiction.” Id. at 2222. Further, in holding that this Court could issue a writ of coram nobis under the facts of Denedo, the Supreme Court relied heavily on the nature of coram nobis as a “belated extension of the original proceeding during which the error allegedly transpired.” Id. at 2221. A military court’s jurisdiction to issue such a writ was thus derived from “the earlier jurisdiction it exercised to hear and determine the validity of the conviction on direct review.” Id. at 2222.
Unlike the writ in Denedo, the relief requested by Loving — a writ of habeas corpus — is not appropriately entertained by this Court under the All Writs Act for three reasons. First, unlike a writ of coram nobis, habeas corpus is not a “belated extension” of the original court-martial proceeding. It is instead an entirely separate civil proceeding in which the petitioner asserts his rights against those who hold him in custody. See id. at 2221 (“[C]oram nobis is ‘a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding.’ ” (quoting Morgan, 346 U.S. at 505 n. 4, 74 S.Ct. 247)); Riddle v. Dyche, 262 U.S. 333, 335-36, 43 S.Ct. 555, 67 L.Ed. 1009 (1923) (“The writ of habeas corpus is not a proceeding in the original criminal prosecution, but an independent civil suit....”); Ex parte Tom Tong, 108 U.S. 556, 559, 2 S.Ct. 871, 27 L.Ed. 826 (1883) (“The prosecution against [petitioner] is a criminal prosecution, but the writ of habeas corpus which he has obtained is not a proceeding in that prosecution.”).
Second, even if a post-conviction habeas corpus petition fell within the ambit of this Court’s All Writs Act authority as an extension of our Article 67, UCMJ, review (which it does not), entertaining such a petition is inappropriate in the present case because the All Writs Act is limited to circumstances where no other remedy is available. Goldsmith, 526 U.S. at 537, 119 S.Ct. 1538 (“The All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law.”). Here, another remedy is available: a habeas corpus petition in an Article III court.
Despite recognizing that such a writ was an available remedy for military prisoners, the Loving III Court nonetheless went on to discount that remedy on the ground that Article III courts would, based on the doctrine of exhaustion, abstain from considering Loving’s petition until the President approved Loving’s death sentence. See 62 M.J. at 248-50; Loving V, 67 M.J. at 3. Lack of presidential approval notwithstanding, I do not believe the exhaustion doctrine prevents Article III review of Loving’s petition. This Court decided in 2005 that the possibility of clemency from the President is not part of the direct judicial review process and, as such, is not an available remedy sufficient to preclude issuing a writ of coram nobis.[4] Loving III, 62 M.J. at 247 (“We conclude that presidential action is not an adequate remedy at law. Presidential action is akin to a state governor’s action, and as such, is not part of the direct judicial review of the case.”). Our determination of what the UCMJ means receives great deference in Article III courts. Middendorf v. Henry, 425 U.S. 25, 43, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976); see also Noyd, 395 U.S. at 694, 696, 89 S.Ct. 1876. It follows, therefore, that the exhaustion doctrine would not necessarily *26 preclude those courts from hearing Loving’s petition based on the mere possibility of executive action.
But even if Article III courts chose to view presidential approval of the sentence in a capital case as a necessary predicate to exhaustion, that view would not necessarily deprive those courts of review power. The Supreme Court has made clear that exhaustion is a prudential doctrine, not a jurisdictional one; it remains subject to the circumstances of the case, including the potential for long delay.[5] See Boumediene v. Bush, 553 U.S. 723, 128 S.Ct. 2229, 2275, 171 L.Ed.2d 41 (2008) (refusing to apply the exhaustion doctrine in cases where petitioners faced “months, if not years, of delay”); see also Denedo v. United States, 66 M.J. 114, 122 (C.A.A.F.2008) (acknowledging that the Supreme Court has not precluded “the possibility that the circumstances of a particular case might warrant consideration of a habeas petition by an Article III court prior to exhaustion.” (citing Councilman, 420 U.S. at 761, 95 S.Ct. 1300)). Thus, an Article III court could choose to hear a military prisoner’s habeas petition in light of significant potential delay in presidential action.[6]
Finally, the usual canon of statutory construction that favors specific statutes over general ones suggests that the All Writs Act cannot be asserted to extend our Article 67, UCMJ, jurisdiction in the face of specific habeas corpus statutes. See Hinck v. United States, 550 U.S. 501, 506, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007) (repeating “the well-established principle that, in most contexts, ‘a precisely drawn, detailed statute pre-empts more general remedies’ ” (quoting EC Term of Years Trust v. United States, 550 U.S. 429, 434, 127 S.Ct. 1763, 167 L.Ed.2d 729 (2007))). “The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.” Penn. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985) (emphasis added). Even if we were to ignore the plain language of Article 67, UCMJ, and assume a theoretical continuing jurisdiction over capital cases in which we once had jurisdiction, such as that advanced by the Loving III Court, see 62 M.J. at 244 (“[W]e conclude that this Court’s subject matter jurisdiction continues even after the Supreme Court’s decision affirming Petitioner’s death sentence.”), the fact remains that Article 67, UCMJ, provides only a general grant of authority, and the All Writs Act provides only a broadly defined mechanism to issue writs in aid of already-existing jurisdiction.
In contrast, Article III habeas corpus power is set down in reticulated statutes detailing not only which courts have the authority to issue writs of habeas corpus, 28 U.S.C. § 2241 (2006), but also specifics related to, inter alia, the form, timing, filing, standards of review, and statutes of limitation for such writs, 28 U.S.C. §§ 2241-55 (2006).[7] Thus, even if the Court’s statutory jurisdiction could be stretched as far as the majority assumes, this Court may not entertain Loving’s petition because an Article III court could properly consider a military prisoner’s *27 habeas corpus petition and the All Writs Act does not allow this Court to act in the face of another, specific statute. See Goldsmith, 526 U.S. at 537,119 S.Ct. 1538.[8]
III. This Court’s Foray Into Habeas Corpus Law Helps Neither This Nor Future Petitioners
I do not doubt that Loving sought a writ of coram nobis here in 2005 because there was presumably nothing to lose. If we entertained it, there was a possibility we would afford him relief. If we refused to entertain it, he was presumably no worse off. But we proposed he file a habeas petition, and, with the Court’s judgment today, he is afforded no relief and is worse off if the judgment is allowed to stand.
And Loving has no incentive to let the judgment stand.[9] The Court’s 2005 expansion of jurisdiction beyond the statutory limits established by Congress was not only unnecessary, given the statutory availability of recourse to an Article III court, but unfortunate. First, we have hastened post-conviction collateral review of a habeas corpus petition in a capital case before the President has acted to approve the sentence. See supra note 6.
Second, we have foreclosed initial review of Loving’s habeas corpus petition by an Article III court on this claim, potentially placing him in the unenviable position of being a successive petitioner. Congress has moved to limit habeas corpus by restricting sucees-sive petitions presenting the same claims:
No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.
28 U.S.C. § 2244(a). If an Article III court concludes that this Court, the United States Court of Appeals for the Armed Forces, is “a court of the United States” under § 2244, the Article III court would not be required to hear the petition. See Loving V, 67 M.J. at 4 (recognizing “the potential effect of a habeas petition before our Court on future habeas petitions filed in the Article III courts”).
Third, in light of the above, the standard of review indiscriminately plucked[10] by this Court to review habeas corpus challenges to our own prior decisions is especially cold comfort to Loving. See Loving TV, 64 M.J. at 145 (adopting the standard of review from 28 U.S.C. § 2254 (2000), which, in part, restricts Article III court review of a state proceeding to whether the state decision was contrary to or an unreasonable application of federal law); accord Loving V, 67 M.J. at 4. *28 Deference to state court decisions under § 2254 reflects the need to balance federal review against respect for proceedings conducted by a separate sovereign — the state. See Williams v. Taylor, 529 U.S. 420, 436-37, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (discussing § 2254’s deference to state court proceedings). Such deference is inexplicable and inappropriate when this Court reviews its own prior holdings. A petitioner seeking collateral review of his court-martial at this Court faces the unusual and uphill battle of convincing us that our own previous actions were not just erroneous, but unreasonable.
While such deference may or may not be warranted when an Article III court is reviewing a decision of this Court, it seems untoward to apply it to our own previous decisions. Most people — a category that arguably includes most judges — would not have adopted a position in the first instance if they thought it was unreasonable.
IV. Conclusion
The writ of habeas corpus is “the most celebrated writ in English law,” William Blackstone, 3 Commentaries 129 (1768), and I do not begrudge Loving’s desire to exercise his constitutional right to challenge on collateral review the alleged ineffective assistance of counsel he received at his capital trial.[11] But absent statutory changes from Congress, the appropriate venue for review of this petition is the Article III courts. Therefore, I respectfully dissent.

. The Court ordered that Loving’s case be returned directly to this Court following the evi-dentiary hearing, rather than first allowing the appropriate convening authority and court of criminal appeals (CCA) to review the military judge’s factual findings. Loving TV, 64 M.J. at 152-53. The Court did so without considering how such makeshift collateral review of final cases would impact procedural mechanisms we have already made up. By commanding that the case be returned directly to this Court, the Court disturbed the multi-step review of the records of courts-martial provided by the Uniform Code of Military Justice (UCMJ), see generally Articles 60, 66, 67, UCMJ, 10 U.S.C. §§ 860, 866, 867 (2006) (establishing the various steps for review of courts-martial), that our practice of remanding for "DuBay hearings” seeks to emulate. See generally United States v. DuBay, 17 C.M.A. 147, 149, 37 C.M.R. 411, 413 (C.M.A.1967) (setting forth the procedure for developing new factual matters after trial, to include a convening authority referring the case to a court-martial for an evidentiary hearing to enter findings of fact and conclusions of law on the record for further review by the convening authority and, if necessary, by the appropriate CCA and CAAF). This judicially crafted DuBay procedure at least creates the legal fiction that we are only reviewing facts in "the record,” by having the new facts reviewed by the convening authority and CCA. See Denedo v. United States, 66 M.J. 114, 136 (C.A.A.F.2008) (Ryan, J., dissenting) (noting the “unwieldy and imperfect system” created by Du-Bay to enable additional factfinding). In this case the facts considered are not properly in "the record” — we do not have, because we bypassed it, the benefit of review of the military judge’s factual findings by either the convening authority or the Army Court of Criminal Appeals.

. Nor does practice within the military justice system reflect a different understanding. Since the current military justice system was created under the UCMJ in 1951, there have been twelve executions and fourteen death sentences that were affirmed on direct review but commuted by the President. Dwight H. Sullivan, "Executive Branch Consideration of Military Death Sentences,” Evolving Military Justice 137 (Eugene R. Fidell & Dwight H. Sullivan eds., 2002). In no capital case other than this one has a writ of habeas corpus been sought in any court before the President approved the sentence. (For cases in which a habeas petition was filed after presidential approval of the death sentence, see, for example, Thomas v. Davis, 249 F.2d 232 (10th Cir.1957); Day v. Wilson, 247 F.2d 60 (D.C.Cir.1957); and Sutiles v. Davis, 215 F.2d 760 (10th Cir.1954).) And no military prisoner with a capital sentence — including one prisoner currently facing a presidentially approved capital sentence — has ever requested a writ of habe-as corpus from this Court after direct review was completed, even after the President acted. See Petitioner’s Response to Motion for Reconsideration, To Lift Stay of Execution and Request for Oral Argument at 5, Gray v. Gray, No. 08-3289-RDR (D.Kan. Dec. 2, 2008) ("Private Gray is seeking federal habeas court review for the first time and he has not delayed commencing this action. In fact, until the President approved his death sentence, there was no action available.”).

. The latter part of this quotation is neither cited nor addressed by the majority. And with respect to the part of the quotation that is cited, the majority fails to explain how, where direct re *23 view is completed, the fact that the President has not yet acted pursuant to Article 71(a), UCMJ, transforms this case into one where further review by this Court is authorized. No review of presidential action under Article 71(a), UCMJ, is provided for or authorized by any statute. Other than by ipse dixit, this case is not one that “may ultimately be reviewed by” this Court. Noyd, 395 U.S. at 695 n. 7, 89 S.Ct. 1876.

. Strangely, while holding that presidential action was an inadequate remedy to preclude a writ of coram nobis — which may only be filed in the absence of any other remedy, see, e.g., Denedo, 129 S.Ct. at 2220 — this Court went on to determine that the same presidential action was an adequate-enough remedy to prevent Article III judicial review under the principle of exhaus- ' tion — which also requires that there be no other remedy, Gusik, 340 U.S. at 131-32, 71 S.Ct. 149. Loving III, 62 M.J. at 247, 249-50. This purported distinction makes no sense.

. Of course, the doctrine of exhaustion is prudential in part because of principles of comity and, relatedly, because remedies not yet asserted may moot the question being considered by a collaterally reviewing court. Councilman, 420 U.S. at 756-57, 95 S.Ct. 1300.

. Regardless, there is little reason to believe that a military prisoner who has been sentenced to death will seek habeas corpus relief before presidential approval, which provides its own delay, given the natural interest a prisoner has in delaying his execution. See Dwight H. Sullivan, The Last Line of Defense: Federal Habeas Review of Military Death Penalty Cases, 144 Mil. L.Rev. 1, 5 n.13 (1994) ("Because death row inmates have an obvious interest in delay of any kind, no service member under a military death sentence would have an incentive to seek habeas relief before presidential action on the sentence.”) (citation omitted).

.Which is not to suggest that these reticulated statutes apply perfectly to the review of military courts-martial. But any difficulty in Article III courts' habeas review of courts-martial convictions neither divests them of jurisdiction to conduct such review, nor gives this Court authority to expand its own jurisdiction. It is for Congress to change the who and the how of habeas review, not this Court.

. This seems all the more obvious where, as here, the legal issue is not one that turns on any interpretation of military law or nuance of military service, but rather presents the constitutional claim of ineffective assistance of counsel — a claim with which Article III courts are at least as familiar as this Court.

. Even though Loving now has every incentive to challenge this judgment, we ought not to wait for such a challenge; it is our responsibility to ensure we have jurisdiction, not his. See, e.g., Ashcroft v. Iqbal, -U.S.-, 129 S.Ct. 1937, 1945, 173 L.Ed.2d 868 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.”); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[Sjubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.” (citation and quotation marks omitted)); United States v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) ("[Sjubject-matter jurisdiction, because it involves a court’s power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court.”).

.Other than asserting its jurisdiction to entertain this habeas petition and selecting its own standard of review, this Court elected not to provide any further guidance to future petitioners as to when and how they should approach us with their claims. Habeas corpus unmoored from any procedural rules and provisions is a novelty, to say the least. The Court failed to consider the prudence of asserting jurisdiction and adopting a standard of review in a vacuum.

. Further, while I take issue with this Court’s continued expansion of its own jurisdiction beyond the limits established by Congress, this Court could provide an adequate venue to evaluate Loving’s conviction if the UCMJ provided jurisdiction over cases in which direct review is completed (preferably with related procedural guidance, in the case of habeas petitions) and if the U.S. Code did not already invest jurisdiction over these cases in Article III courts. Whatever its beginnings, far from being "a rough form of justice,” Reid v. Covert, 354 U.S. 1, 35, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), the military justice system today, including this Court, generally provides "substantial procedural protections and provision for appellate review by independent civilian judges [to] 'vindicate servicemen's constitutional rights.’ " Hamdan v. Rumsfeld, 548 U.S. 557, 586, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) (quoting Councilman, 420 U.S. at 758, 95 S.Ct. 1300). This is confirmed by the extensive and careful review received in this case to date. See United States v. Loving, 34 MJ. 956 (A.C.M.R. 1992) (direct appeal); United States v. Loving, 34 M.J. 1065 (A.C.M.R. 1992) (petition for reconsideration); United States v. Loving, 41 M.J. 213 (C.A.A.F.1994) (mandatory direct review); United States v. Loving, 42 MJ. 109 (C.A.A.F.1995) (petition for reconsideration); Loving v. Hart, 47 M.J. 438 (C.A.A.F.1998) (petition for writ of mandamus to CCA); Loving v. United States, 62 M J. 235 (C.A.A.F.2005) (petitions for writ of coram nobis); Loving v. United States, 64 MJ. 132 (C.A.A.F.2006) (petition for writ of habeas corpus). But the fact that this Court may be competent to adjudicate Loving’s constitutional claim does not answer the antecedent question whether Congress has authorized it to do so once direct review is completed.